DAVIS, STATE BANK COMMISSIONER, v. MOORE.

Opinion delivered July 9, 1917.

Appeal from Grant Circuit Court; *W. H. Evans,* Judge; reversed.

GRAHAM v. DAVIS, STATE BANK COMMISSIONER.

Opinion delivered July 9, 1917.

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; affirmed.

1. CORPORATIONS—LEGISLATIVE AMENDMENT TO CHARTER.—The Legislature, under Art. 12, § 6, of the Constitution, may amend or revoke charters granted to corporations, without any restriction except that no injustice shall be done to the corporators.

2. CORPORATIONS—AMENDMENT TO CHARTER BY LEGISLATURE.—The power to revoke or amend a corporation's charter, includes the power to impose any new terms which work no injustice to the stockholders within the meaning of the provision of the Constitution.

3. BANKS AND BANKING—DOUBLE LIABILITY OF STOCKHOLDERS—CONSTITUTIONALITY OF STATUTE—RETROACTIVE EFFECT.—The provision of the Act of 1913, p. 462, making stockholders of banks liable for the debts of the bank to an amount equal to the amount of their stock in said bank, *held* to be retroactive in effect, and to be valid under the Constitution.

4. STATUTES—BORROWED STATUTES—CONSTRUCTION.—A statute taken from that of another jurisdiction is taken with its judicial interpretation.

5. BANKS AND BANKING—DOUBLE LIABILITY OF STOCKHOLDERS—RIGHT OF SUIT.—Under § 23 of the Act of 1913, p. 462, the enforcement of stockholders' liability is not dependent upon an order of the chancery court, but the duty of enforcing the liability is placed independently upon the Bank Commissioner.

6. BANKS AND BANKING—ENFORCEMENT OF DOUBLE LIABILITY.—It is for the Bank Commissioner to determine when the double liability of stockholders is to be enforced.

7. BANKS AND BANKING—ENFORCEMENT OF DOUBLE LIABILITY—REMEDY OF SHAREHOLDER.—The remedy of a shareholder for the correction of mistakes of the Bank Commissioner in declaring an excessive amount due must arise in the distribution of the funds.

*Moore, Smith, Moore & Trieber,* for appellant in *Davis* v. *Moore.*

1. The act is not unconstitutional. Art. 12, § 6, Constitution, Ark.; 4 Wheat 518. The Legislature has power to impose the double liability upon stockholders of corporations. 21 N. Y. 9; 98 Mich. 472; 26 Me. 196; 9 R. I. 194; 70 Minn. 538; 5 Wis. 577; 108 Ky. 21; 111 Cal. 57; 1 Black. 587; 179 U. S. 46; 15 Wall. 478.

2. It is not against the Fifth Amendment to the Constitution of the United States. 104 U. S. 155; 123 *Id.* 131; 147 *Id.* 490. Nor against the Fourteenth Amendment, Constitution of the United States. 164 U. S. 684; 8 Wall. 498; 94 U. S. 673; 99 *Id.* 628; 201 *Id.* 216.

3. Nor is it unconstitutional as violative of article 2, section 8, or article 2, section 1, State Constitution. Section 53 of the act is identical with the National Banking statutes. See cases *supra.* The Bank Commissioner has authority to determine the necessity of an assessment and his determination is conclusive. *Supra.*

4. No injustice is done to the corporators. Art. 12, § 6, Const.; 64 Ark. 83; 69 *Id.* 521, 530; 87 *Id.* 587; 94 *Id.* 27.

5. Defendant is estopped under sections 4 and 20 of the act to attack the constitutionality of the act. 21 S. W. 39; 65 *Id.* 312; 16 N. Y. 116; 94 U. S. 673.

6. An order of the chancery court was not a prerequisite to this suit. § 53 act; Rev. Stat. U. S., § 5234; 164

U. S. 684; 107 *Id.* 251.   The decision of the Bank Commissioner is conclusive.   8 Wall. 498; 94 U. S. 763; 99 *Id.* 628; 201 *Id.* 216.   It is not necessary to prove that the bank is solvent.   Nor was it material to prove that the money and debts due the bank had been collected, or exhausted.   92 U. S. 156; 25 Col. 551; 104 Me. 141; 120 Mich. 1.

7.   The stockholders were liable for all debts, etc., outstanding January 15, 1915, whether incurred before or after January 1, 1914.   116 Ark. 472.   By *continuing* business after the new act became effective, it is conclusively presumed to have *continued* under Act 113.   See 118 Ark. 176; 124 *Id.* 531; 120 Mich. 1; 149 Fed. 305; 12 Ark. 769; 81 N. W. 1059.

8.   Interest should be allowed.   94 U. S. 437.; *Ib.* 673; 56 Neb. 288.

*Mehaffy, Reid & Mehaffy,* for appellee.

1.   The act is unconstitutional as an impairment of the stockholders' contract.   Art. 1, § 1, Constitution, U. S. No additional burden can be imposed.   54 Ark. 111; 69 *Id.* 407; 69 *Id.* 521; 85 *Id.* 346; 89 *Id.* 418; 94 *Id.* 27; 19 Oh. St. 369; 5 Dill. 348.

2.   It is contrary to article 12, section 6, Constitution of Arkansas.   *Supra.*

3.   Appellees not estopped.   31 Ark. 701.

4.   Stockholders are not liable for debts, etc., made before January 1, 1914.   The act is not and can not be retroactive.   116 Ark. 472; 38 Conn. 408; 4 Denio (N. Y.) 374; 33 Vt. 84; 15 Wis. 548; 47 S. E. 893.

5.   It was not shown that the bank was insolvent when it closed.   129 N. Y. S. 993.

6.   Appellant can not maintain this suit.   No order of a chancery court was obtained.   It was material to allege and prove when the debts, etc., were incurred.   1 Michie on Banks, etc., 238; 70 Pac. 454.

*Taylor, Jones & Taylor,* for Graham.

1.   The act is unconstitutional.   Const., art. 12, § 6; 54 Ark. 111; 58 *Id.* 407; 69 *Id.* 521; 85 *Id.* 346; 89 *Id.* 418;

94 *Id.* 27. Especially if the act is retroactive. Cook on Corp. (5 ed.), § 501; Morawetz on Corp., § 1098, p. 1098; Beach on Private Corp., § 40; Thompson, Law of Corp., § 5417; Black on Const. Law, 535; Spelling on Private Corp., § 1028; 1 Rose, Notes U. S. Rep., p. 942; 64 N. J. L. 217; 43 Atl. 435; 58 N. J. Eq. 97; 68 N. J. L. 588; 90 Am. Dec. 617; 83 Ga. 61; 47 S. E. 893; 57 N. W. 595; 54 Ark. Law Rep. 338.

2. The finding of the Bank Commissioner is not a *quasi*-judicial determination; but if so, a court of chancery should direct him to give the act its proper construction and then levy such assessments as are reasonably necessary to pay the debts contracted since the statute became effective. Cases *supra.*

*Bridges, Wooldridge & Wooldridge* and *Moore, Smith, Moore & Trieber,* for Davis.

1. The act is not unconstitutional. See cases cited *supra.*

2. A law is not retrospective when it deals with future maintenance of existing conditions. 166 U. S. 290; 342; 133 N. Y. Sup. 152; 148 Mass. 368; 19 N. E. 390.

3. There is no estoppel. The action of the commissioner is conclusive. Cases *supra.* See also 63 S. W. 776. No order of a chancery court was necessary. See authorities cited in brief for appellant, *Davis* v. *Moore.*

McCULLOCH, C. J. In each of the two actions now under review John M. Davis, as Bank Commissioner of the State, was the plaintiff seeking to enforce against one of the stockholders in a bank the liability imposed by the banking law for the debts of the banking corporation to the extent of an amount equal to the par value of the stock held in such corporation. In the Moore case the Bank Commissioner sued the stockholders of the Bank of Leola, a defunct banking corporation, and in the Graham case the Bank Commissioner sued the stockholders of the defunct Bank of Pine Bluff.

The Bank of Leola was incorporated and began business in the year 1907, and was found to be insolvent and

was turned over by the board of directors to the Bank Commissioner on January 15, 1915. On April 29, 1915, the Bank Commissioner made a call on the stockholders for the full amount of the double liability prescribed by statute, and upon the defendant's failure to respond he instituted this action on July 23, 1915. The evidence shows beyond substantial dispute that The Bank of Leola was insolvent at the time that its affairs were taken over by the receiver appointed by the Bank Commissioner; that its liabilities, exclusive of the liability to stockholders on their shares of stock, was $45,862.82, and that the assets of the bank, according to the appraisement of the fair market value amounted only to the sum of $25,306.96, thus showing insolvency to the extent of the sum of $20,555.86 of liabilities over the assets. The evidence shows that a considerable portion of the liabilities of the bank existing at the time it was taken over by the Bank Commissioner was incurred prior to January 1, 1914, the date on which the present banking law went into effect. The conclusion reached by the court with respect to the imposed liability under the statute renders unnecessary to inquire how much of the indebtedness was incurred prior, and how much subsequent to the said date on which the banking law went into effect. The case was tried before the court sitting as a jury and there was a finding by the court in favor of the defendant. The Bank Commissioner appealed from the judgment rendered by the court on its finding.

The Graham case was transferred from the circuit court to the chancery court, and was heard by the chancellor upon the pleadings, the decree being in favor of the Bank Commissioner, from which the defendant prosecuted an appeal.

The same questions arise in each case, and may be disposed of in one opinion. The statute under which this litigation arose was an act of the General Assembly of 1913, approved by the Governor March 3, 1913, Acts of 1913, page 462. The last section, however, provides that the act should not take effect until January 1, 1914. The

sections of the statute which are necessary to notice in the consideration of these cases read as follows:

"Section 4. The Secretary of State shall turn over to the State Bank Department all papers, books, records, charters, articles of partnership, articles of agreement and amendments thereto, in his office relating to banks, trust companies and savings banks. It shall be the duty of each bank heretofore organized and doing business in this State to report within thirty days after this act goes into effect to the Bank Department, a full and complete list of its stockholders, or members, as the case may be, showing the residence and the amount of stock or interest owned by each, and all such banks as shall make such report and declare its purpose to continue business under this act shall be authorized to do so without the payment of any additional fee, or without the filing of any additional articles of agreement or articles of partnership, providing the legal fees have once been paid ·for such service. Any bank, trust company or savings bank that shall fail to make report and declare its purpose to continue business, shall not be allowed to do business in this State, and all such as have not paid fees shall pay the same fees as are provided for herein."

"Section 20. Any bank organized under the laws of this State shall be permitted to receive money on deposit, and to pay interest thereon; to buy and sell exchange, gold, silver, coin, bullion, uncurrent money, bonds of the United States, or of this State, or of any city, county, school district, or other municipal corporation or improvement district thereof, and State, county, city, township, school district, or other municipal or improvement district indebtedness; to lend money on chatttel and personal security, or on real estate secured by deeds of trust; provided, that all such institutions now organized and doing business in this State are hereby permitted to continue such business; but in all other respects their business, and the manner of conducting same, and the operation thereof shall be carried on subject to the laws of this State, and in accordance therewith."

Section 36 reads in part as follows:

"The stockholders of every bank doing business in this State shall be held individually responsible equally and ratably, and not one for another, for all contracts, debts and engagements of such bank, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such stock."

Other sections provide for the Bank Commissioner taking charge of a bank when found to be insolvent, either on the initiative of the directors of the bank, or on the initiative of the commissioner himself, and full authority is conferred by the statute upon the Bank Commissioner to wind up the affairs of the bank by collecting the debts due and claims belonging to it, and assets, converting the same into money and discharging its liabilities. The concluding paragraph of section 53, which sets forth the power and duties of the commissioner, reads as follows:

"The commissioner shall collect all debts due and claims belonging to it and upon the order of the chancery court of the county in which it is doing business, may sell or compound all bad or doubtful debts, and on like order may sell all its real and personal property on such terms as the court shall direct; and if necessary to enforce the liabilities of its stockholders."

It is contended that the statute is unconstitutional, especially if construed to have a retroactive effect so as to make stockholders liable for debts of the bank incurred prior to the time that the statute went into effect, for the reason that it would constitute an impairment of the obligation of the contract between a bank and its stockholders. We are unwilling to give assent to that view of the question at issue, for to do so would disregard prior decisions of this court.

(1)    The Constitution of 1874 (article 12, section 6) reads as follows:

"Corporations may be formed under general laws, which laws may, from time to time, be altered or repealed. The General Assembly shall have the power to alter, revoke or annul any charter of incorporation now existing

and revokable at the adoption of this Constitution, or any,
that may hereafter be created, whenever, in their opinion,.
it may be injurious to the citizens of this State, in such a
manner, however, that no injustice shall be done to the
corporators.''

That provision of the Constitution has been con-,
strued by this court to empower the lawmakers of the,
State to amend or revoke charters granted to corpora-
tions, without any restrictions except that ''no injustice,
shall be done to the corporators.''  *Railway Company* v.
*Gill,* 54 Ark. 101; *Leep* v. *Railway Company,* 58 Ark. 407;,
*Railway Company* v. *Paul,* 64 Ark. 83; *Woodson* v. *State,*,
69 Ark. 521; *Ozan Lumber Co.* v. *Biddie,* 87 Ark. 587;.
*Arkansas Stave Co.* v. *State,* 94 Ark. 27.

In each of those cases it was held to be within the.
province of the Legislature to impose new terms and obli-.
gations upon corporations under the reserve power to.
amend or revoke charters, and it was held that it was a,
matter for determination in each case as to whether the.
legislation came within the constitutional inhibition that
''no injustice shall be done to the corporators.''  The doc-.
trine was so carefully and learnedly elaborated by Judge
BATTLE in the *Leep* case, *supra,* that it is unnecessary to.
renew the discussion.

The doctrine clearly applicable to the present case
was summed up in that opinion as follows:

''Natural persons do not derive the right to contract:
from the Legislature.  Corporations do.  They possess
only those powers or properties which the charters of,
their creation confer upon them, either expressly, or as.
incidental to their existence; and these may be modified:
or diminished by amendment or extinguished by the re-
peal of the charters.''

The same doctrine was forcefully reiterated by
Judge RIDDICK in the case of *Woodson* v. *State, supra.*

But it is argued that those cases have no application:
to the questions now presented for the reason, it is stated,:
that the court was dealing solely with the question of the:
relative rights of the public and of the corporation itself,·

whereas in the present cases we deal with the rights of the stockholders and that the statute operates as an impairment of the contract between the corporation and its stockholders. The fundamental error of the argument is in the assumption that the statute deals with the contract between the stockholder and the corporation. We think, on the contrary, that the statute deals entirely with the. rights of the public as against the corporation and its stockholders, fixing the terms under which the franchise may be operated. The liability of stockholders for the debts of the corporation arises altogether by force of the statute and not out of the contract between the stockholders and the corporation. The obligation of that contract is merely that the corporation shall answer to the stockholders to the extent of the par value of the stock and the accumulated profits. In other words, the value of the stock is the measure of the contractual liability of the corporation to its stockholders. The Supreme Court of the United States in *Christopher* v. *Norvell,* 201 U. S. 216, in discussing the question of liability of stockholders under the National Banking Law, said that "although in a limited sense there is an element of contract" in a person having become a shareholder in a corporation, the liability of a shareholder as such "has its sanction in the statute creating liability against each shareholder."

We think that our own cases cited *supra,* deciding as to the validity of other statutes, are conclusive of the question now before us, but there are decisions of other courts on statutes similar to the one now involved which hold that such statutes are free from the objections now urged. *Williams* v. *Nall,* 108 Ky. 21; *McGowan* v. *McDonald,* 111 Cal. 57; *Bissell, Receiver,* v. *Heath,* 98 Mich. 472.

(2) The effect is the same, so far as concerns the validity of the statute, even when it is construed retrospectively so as to make the stockholders liable for debts already incurred before the statute went into effect. The statute constituted an imposition of new terms upon which corporations of this character may continue to do

business, and, as before stated, the power to amend or revoke the charter includes the power, of course, to impose any new terms which work no injustice to the stockholders within the meaning of the provisions of the Constitution. Subscribers for or purchasers of stock in a banking corporation prior to the enactment of the statute now under consideration took their stock charged with notice of the power of the law-makers to amend the provisions of the law with respect to the terms upon which corporations may do business. This is so by virtue of the express reservation in the Constitution of the power of the law-makers to amend or revoke charters, and there can be no legal objection to legislation of this kind which does no injustice to the holders of shares of stock in a corporation. They took the stock with notice of the power of the Legislature and must abide by any reasonable provision which the Legislature may from time to time prescribe. The statute does not, it must be remembered, impose any unconditional liability on the stockholders. The liability arises, not by virtue of the statute alone, but it arises upon the acceptance of those terms by a continuation of the corporation in the banking business. Section 4 declares a period of time within which all banking corporations had after the act went into effect to signify acceptance of the new terms prescribed by the statute or to discontinue the business sought to be regulated by the statute. Section 20 defines the banking business and the proviso therein preserves the corporate status of all such concerns, whether the charter powers were the same as prescribed by the new statute or not, but compels them in all other respects to comply with the terms of the new statute.

(3) It is thus seen that the statute was intended only to prescribe terms upon which banking corporations might thereafter continue in business, and it imposed no additional liability upon the stockholders unless those terms were accepted by a continuance of the corporation in that business. So the statute falls within the principle announced so often by this court, that the Con-

stitution reserves the power of the law-makers to amend charters of corporations by prescribing new terms upon which they may do business, or even to revoke charters of corporations found to be injurious to the public inter-est, either an amendment or revocation, being without in-justice to the stockholders.

We do not think that this statute falls within the terms of the limitation upon the power of the Legislature with respect to confining amendments to those which do no injustice to the corporators. The statute, as we have already seen, does not impose an absolute liability on the shareholder of stock, nor does it compel the corporation or its stockholders to accept the provisions of the statute. It does not operate in any sense as a confiscation of the shares of stock, for the corporation may be wound up and in that way the property interest of the stockholders pre-served or an individual stockholder may sell his stock if he objects to the corporation continuing business under the new terms prescribed. It can not be assumed that the new terms prescribed by the statute operate as an im-pairment or depreciation of the value of the stock, and that an objecting stockholder would be unable to dispose of his shares of stock at full value. The statute is reason-able and just alike to the public and to stockholders in banking corporations, and for that reason, if for no other, it can not be assumed that the imposition of new meth-ods of business and new terms upon which a corporation may operate business would depreciate the market value of stock in such corporation.

It is evident, we think, that the Legislature intended to give a retroactive effect to this statute so as to make it apply to all banking corporations which continue in business. We do not ignore the well-known presumption against giving, by implication, a retrospective effect to statutes. The rule is, we know, that every statute is pre-sumed to have been intended to act prospectively unless otherwise expressed, but when this statute is considered as a whole, it is obvious that the Legislature intended to impose liability for all the indebtedness of a bank

whether it accrued prior to the time the act went into force or thereafter. It is difficult to separate the obligations of a going business concern like a bank. Of course, after it becomes insolvent it would be possible for the Bank Commissioner to ascertain and separate the obligations of the bank which accrued subsequent to a certain date and impose the statutory liability against stockholders only as to such indebtedness. But that would not be the convenient or orderly method of winding up the affairs of such a corporation and applying its assets ratably among the creditors. The statutory scheme would, not, we think, be complete and efficacious unless construed to impose liability on the stockholders for its debts irrespective of the time when contracted, and this affords a strong reason for construing the statute as operating retroactively. At any rate, the statute declares that stockholders of "every bank doing business in this State"—that is to say, all who did business in the State after the statute went into effect—"shall be liable for all contracts, debts and engagements of such bank" to the extent of their stock, etc., and the clear inference from this language is that from and after the period stated the stockholders should be liable for all debts of the bank whether contracted before or after that time.

Our conclusion, therefore, is that the statute applies retroactively, and that as such it is not in conflict with the Constitution of this State or of the United States.

(4-5) There are still other important questions involved in these appeals. It is claimed that under the peculiar language of section 23, hereinbefore quoted, which is the only part of the statute conferring authority on the commissioner to sue a stockholder to enforce the double liability for indebtedness of the bank, he can do so only when ordered by the chancery court. The language of this section, as well as that of many other provisions of the statute, are copied from the National Banking Act of Congress, which had been construed by the Supreme Court of the United States prior to the passage of our statute. In other words, our statute is a borrowed one,

and, according to established canons of construction, we take the statute with its judicial interpretation. It seems clear to us from analysis of the language of this section that that part of the statute which relates to the enforcement of double liability is not dependent upon an order of the chancery court, but the duty is imposed upon the Bank Commissioner, independently, to enforce that liability.

The further question is raised whether or not the action of the Bank Commissioner in levying the assessment for the stockholders is conclusive as to the necessity for the call and the amount thereof. In other words, is it open to inquiry whether or not the corporation is insolvent, and, if so, to what extent is it necessary to impose liability on the stockholders, or is the act of the Bank Commissioner conclusive of those questions in a suit to enforce the liability? That question is, we think, concluded under the doctrine of the effect of borrowing a statute with its interpretation from another jurisdiction. The provisions of our statute are almost identical with the National Banking Act with regard to the enforcement by the Bank Commissioner of the double liability of stockholders. Neither of the statutes provide in detail how the liability shall be enforced, but each of them do provide that it shall be enforced, under our statute by the Bank Commissioner, and under the National Banking Law by the receiver appointed by the comptroller. Each of the statutes declares the double liability in precisely the same language and authorizes the Bank Commissioner, or the receiver appointed by the comptroller, as the case may be, to take charge of the assets of the bank and distribute the same. The Supreme Court of the United States in a number of cases, beginning with the case of *Kennedy* v. *Gibson,* 8 Wall. 498, has decided that the decision of the comptroller as to the insolvency of the bank, the necessity for imposition of double liability on the stockholders and the amount thereof, is conclusive and can not be controverted by the stockholders in a suit brought by the comptroller to enforce the liability.

(6-7)  Giving effect, as we should, to this interpretation of the borrowed statute, we must hold that the action of the Bank Commissioner in making the assessment of liability of individual stockholders is conclusive in an action to enforce that liability.  The remedy of a stockholder for the correction of mistakes of the Bank Commissioner in declaring an excessive amount due, must arise in the distribution of the funds.  Of course, we are speaking now with reference to an assessment made by the commissioner free from any charge of fraud or collusion.  It is unnecessary to determine now what the remedy of a stockholder would be where a charge of that kind is made against the good faith of an assessment.

It follows from what we have said that the circuit court erred in its decision of the Moore case, and that the judgment in that case is reversed and the cause remanded for further proceedings in accordance with this opinion. The decree of the chancery court in the Graham case was correct and the same is affirmed.

### Opinion delivered July 2, 1917.