WILLIAM T. MAXWELL, as Bank Commissioner of the State of Arkansas, Respondent, *v.* JOHN F. THOMPSON and OSCAR F. LANE, as Executors of, and LEE D. VAN WOERT and RUTH THOMPSON VAN WOERT, as Trustees under, the Last Will and Testament, etc., of ALBERT LANE, Deceased, Appellants.

Third Department, January 5, 1921.

Banks and banking — action by Bank Commissioner of foreign State to enforce assessment against stockholder, resident of this State — constitutionality of foreign statute (Act 113 of Acts of General Assembly of 1913, State of Arkansas) increasing liability of stockholder — foreign statute construed — interest on assessment — costs.

In an action by the Bank Commissioner of the State of Arkansas to enforce an assessment against the defendants' testator made under section 36 of act 113 of the Acts of the General Assembly of 1913 of the State of Arkansas, it appeared that the testator, a resident of this State, was one of the original incorporators and stockholders of a bank organized under the Manufacturers and Traders Act of the State of Arkansas which did not contain any provision imposing liability on the testator greater than his investment in the stock of the bank, and that in 1913 the aforesaid act 113 was passed making a stockholder liable to the extent of the amount of his stock in addition to the amount invested in such stock.   Said act also provided in effect that any bank which should fail to declare its purpose to contine business thereunder should not be allowed to do business in the State.

*Held*, that a judgment in favor of the plaintiff should be affirmed;

That the act under which the aforesaid assessment was made, having been declared constitutional by the courts of the State of Arkansas, the courts of this State will not reconsider the subject so as to reach a different conclusion;

That it was not necessary for the bank to give notice to the testator of a meeting called for the purpose of determining whether the bank should

elect to continue business under the act, for pursuant to the provisions thereof the question was for the board of directors to decide.

Interest was properly chargeable upon the assessment against defendants' testator from the time the assessment was payable.

Since the right to maintain the action is based upon matters foreign to the administration of the estate, costs were properly taxed and allowed.

APPEAL by the defendants, John F. Thompson and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Otsego on the 13th day of September, 1920, upon the decision of the court rendered after a trial before the court at the Otsego Trial Term, a jury having been waived.

*Thompson & Van Woert* [*J. F. Thompson* of counsel], for the appellants.

*Cooke & Basinger* [*Harris L. Cooke* of counsel], for the respondent.

KILEY, J.:

In 1890 the Bank of Pine Bluff, at Pine Bluff, Jefferson county, Ark., was organized under the Manufacturers and Traders Act of the laws of the State of Arkansas, with a fixed capital of $100,000, shares $25 each. (See Ark. Acts of 1868-69, No. 92; Kirby's Digest Ark. Stat. § 837 *et seq.*) Albert Lane, appellants' testator, a resident of Otsego county, N. Y., was one of the original incorporators; his subscription amounted to $2,000, or eighty shares of the stock at its par value. In 1896 the capital stock of the bank was reduced one-third; he surrendered his certificate and received a new certificate representing stock, at par value of $1,333.33. Albert Lane died in July, 1908; the appellants represent his estate in the different capacities as indicated in the title of this action. This was a State bank, and at the time of its organization the act under which it was organized did not contain any provision imposing liability on the stockholder greater than his investment in the stock of the bank. In 1913 the General Assembly of the State of Arkansas passed a law entitled: "An Act for the organization and control of Banks, Trust Companies and Savings Banks." (Ark. Acts of 1913, act 113.) The act provides for the appointment of a Bank Commissioner

who shall be charged with the execution of all laws relating to organization, inspection, supervision, control, liquidation and dissolution of banks or trust companies. He has power, under the act, to make rules and regulations for the conduct of the business of said banks and trust companies. Section 10 of said act defines a " bank " as follows: " Whenever in this Act shall be used the word ' bank,' it shall be understood to apply alike to any incorporated bank, trust company, savings bank, copartnership or individuals transacting a banking business." Section 36 of said act provides as follows: " The stockholders of every bank doing business in this State shall be held individually responsible equally and ratably, and not one for another, for all contracts, debts and engagements of such bank, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such stock; *provided*, that persons holding stock as executors, administrators, guardians or trustees shall not be personally subject to liability as stockholders, but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in such trust fund would be, if living and competent to act and hold the estate in his own name." Let it be observed here that the words " doing business in this State," found in the first and second lines of this section, refer to " bank " and not to the individual " stockholders," immediately preceding the above-quoted words. Section 19 of said act provides: " The affairs and business of any incorporated bank organized under the laws of this State, shall be managed and controlled by a board of directors of not less than three, who shall be selected from the stockholders at such times and in such manner as may be provided by its by-laws." A bank speaks only through its board of directors. Section 4 of said act, speaking of banks theretofore organized, says: " It shall be the duty of each *bank* heretofore organized and doing business in this State, to report within thirty days after this Act goes into effect, to the Bank Department, a full and complete list of its stockholders, or members, as the case may be, showing the residence and the amount of stock or interest owned by each, and all such banks as shall make such report and declare its purpose to continue business under this Act

shall be authorized to do so without the payment of any additional fee, or without the filing of .any additional articles of agreement or articles of partnership, providing the legal fees have once been paid for such service. Any bank, trust company or savings bank that shall fail to make report and declare its purpose to continue business, shall not be allowed to do business in this State, and all such as have not paid fees shall pay the same fees as are provided for herein." It will be observed that it is the *bank*, not the *stockholders*, who are called upon to act under this section. Section 61 of said act provides that it shall take effect January 1, 1914. On January 8, 1914, the Bank of Pine Bluff filed a certified list of its stockholders and declared its intention and purpose to continue business under the act in question, viz., act No. 113 of the Acts of the General Assembly of 1913, State of Arkansas. Albert Lane, appellants' testator, and his estate have owned stock in this bank from its incorporation down to the present time. On July 3, 1914, the said bank was insolvent, and its assets and property were taken possession of by the Bank Commissioner of the State of Arkansas. He found the bank hopelessly insolvent, and to such an extent that it was necessary to call upon each of the stockholders for an amount equal to the amount of the capital stock held by each of them; such assessment was made under the provision and authority found in section 36 of said act. The estate of Albert Lane refused to pay the amount called for by the assessment made as aforesaid; suit was brought and resulted in a judgment in favor of the plaintiff as such Commissioner, and from which judgment this appeal was taken. Appellants object to the judgment against them upon the following several grounds, viz.: That said act 113 of the General Assembly of 1913 of the State of Arkansas violates subdivision 1 of section 10 of article 1 of the Constitution of the United States; that it is violative of section 1 of the 14th Amendment of the Constitution of the United States; that it also violates section 17 of article 2, section 18 of article 2, and section 21 of article 2 of the Constitution of the State of Arkansas, and section 6 of article 12 of the Constitution of the State of Arkansas. The case of *Dartmouth College* v. *Woodward* (4 Wheat. 518) arose in the time of Daniel Webster, in the State of New Hampshire. The

question under consideration there was the power of the Legislature of a State to interfere with or take away any powers the State had vested in a private corporation. Mr. Justice STORY writing in that case said: " If the Legislature mean to claim such an authority [to take away any powers vested by its charter in a private corporation] it must be reserved in the grant." This decision, I think, was in 1819. In *Looker* v. *Maynard* (179 U. S. 52), speaking of the effect of the decision in 4 Wheaton (*supra*) and of such a provision as suggested by Mr. Justice STORY in his opinion in that case, and citing *Greenwood* v. *Freight Co.* (105 U. S. 13, 20, 21), it was said: "After that decision, many a State of the Union, in order to secure to its Legislature the exercise of a fuller parliamentary or legislative power over corporations than would otherwise exist, inserted, either in its statutes or in its Constitution, a provision that charters thenceforth granted should be subject to alteration, amendment or repeal at the pleasure of the Legislature. * * * The effect of such a provision, whether contained in an original act of incorporation, or in a Constitution or general law subject to which a charter is accepted, is, at the least, to reserve to the Legislature the power to make any alteration or amendment of a charter subject to it, which will not defeat or substantially impair the object to the grant, or any right vested under the grant, and which the Legislature may deem necessary to carry into effect the purpose of the grant, or to protect the rights of the public or of the corporation, its stockholders or creditors, or to promote the due administration of its affairs." In the Constitution of the State of Arkansas adopted in 1874 is found section 6 of article 12, of which it is urged the plaintiff's claim and subsequent judgment is violative; it reads as follows: " Corporations may be formed under general laws, which laws may, from time to time, be altered or repealed. The General Assembly shall have the power to alter, revoke or annul any charter of incorporation now existing and revokable at the adoption of this Constitution, or any that may hereafter be created, whenever, in their opinion, it may be injurious to the citizens of this State, in such a manner, however, that no injustice shall be done to the corporators." The cases above cited from the United States courts show that this act is

authorized and operative, and consequently any act legally done under this provision of the Constitution is authorized. Act 113 of the Acts of 1913 was enacted into law by authority of section 6 of article 12 (*supra*). The constitutionality of said act 113, same as raised here, was before the courts of the State of Arkansas in *Davis* v. *Moore* and *Graham* v. *Davis* (argued together and reported in 130 Ark. 128). It was there held this act was not unconstitutional. That statute having been passed upon by the courts of the State of Arkansas, adversely to the appellants' contention, we should respect the decision and should not reconsider the subject so as to reach a different conclusion. (*Jessup* v. *Carnegie*, 80 N. Y. 441.) In *Knickerbocker Trust Co.* v. *Iselin* (109 App. Div. 688) it is held, referring to the personal liability of a stockholder residing in this State on stock owned by him in a foreign corporation, that " Such liability is a contractual liability assumed by becoming a stockholder and is enforcible everywhere." The same case holds that the validity and interpretation thereof are determined by the *lex loci*, but the remedy is governed by the *lex fori*. As before observed, the liability sought to be established in this action was created under section 36 of act 113 of the Acts of 1913 of Arkansas. A like liability, in all essentials, is created by the Banking Law of this State and by the National Banking Law. (See Consol. Laws, chap. 2 [Laws of 1914, chap. 369], § 120; U. S. R. S. §§ 5151, 5152; Federal Reserve Act [38 U. S. Stat. at Large, 252], § 2; Id. [38 id. 273], § 23.) If it were not so, we could not change the scope of the Arkansas statute by a ruling in this State. (*Schwertfeger* v. *Scandinavian American Line*, 186 App. Div. 89.) To attempt it is unnecessary, as the law, in that regard, applicable to the Arkansas statute and to the New York statute and the Federal statute, is similar in its operation and effect. In the absence of evidence of the statutory enactments affecting the liability of a stockholder in a foreign corporation, the common law of such State is presumed to be the same as in this State. (*Southworth* v. *Morgan*, 205 N. Y. 293.) The constitutionality of this act, or the several acts of the several jurisdictions, has been established. (*Looker* v. *Maynard*, 179 U. S. 46.) It is apparent that even the appellants were satisfied that they must

recede from their general stand upon the unconstitutionality of the act, and fall back upon the provision found in the Constitution of the State of Arkansas, section 6 of article 12, wherein it is urged that the exercise of legislative authority, where an existing charter is " altered or repealed," is limited by the words " in such a manner, however, that no injustice shall be done to the corporators." Corporators are always stockholders at some time; but stockholders are not always corporators; in this case, however, the stockholder was a corporator. Appellants urge that the procedure was in contravention of this provision of the Arkansas Constitution, in that they should have been given notice of a special or regular meeting, as stockholders, where the question was to be decided as to whether the Bank of Pine Bluff should elect to continue business under the provisions of act 113 of the Acts of 1913 of Arkansas. The answer is, that section 4 of said act hereinbefore set forth does not provide or require that notice be given to the stockholder; and section 19 of said act provides that the affairs of the bank shall be " managed and controlled by a board of directors." It appears from the record and findings that appellants did not have notice; but the bank, as such, with the exception of a minor detail, as to town residence in this State of Albert Lane's representative, did comply with the statute. This appeared in the list of stockholders filed with the Commissioner of Banks, and notice not being required does not avail the appellants. The principal reason for filing the list of stockholders with the Banking Department was so that any notice required could be sent to such stockholder. In this case it did no damage, because the proper parties, appellants, received notice of the assessment. While it is held that the necessity for the assessment and the amount of such assessment are not open to question in a suit against stockholders therefor (*Bushnell* v. *Leland*, 164 U. S. 684; *Casey* v. *Galli*, 94 id. 673; *National Bank* v. *Case*, 99 id. 628; *Christopher* v. *Norvell*, 201 id. 216), as hereinbefore observed, the Federal and Arkansas laws in this regard are similar; therefore, these cases state the rule applicable here. Yet notwithstanding these holdings, section 56 of the Arkansas statute (Acts of 1913, act 113) does provide that a review of the action of the Commissioner of

Banks may be had before the Court of Chancery; the appellants did not seek a remedy there. The Bank of Pine Bluff continued to do business from January 1, 1914, to July 3, 1914, and it will be presumed to have accepted the benefit conferred by that act in its favor, and to have acted under the only authority it was entitled to act under. (*Clement* v. *United States*, 149 Fed. Rep. 305.) The Arkansas act (Acts of 1913, act 113, § 4) provided that unless the bank brought itself under the provisions thereof, it must cease to do business; it having continued under such action as it did concededly take, the appellants will not now be permitted to deny its existence or legal validity. " To· hold otherwise would be contrary to the plainest principles of reason and of good faith, and involve a mockery of justice. Parties must take the consequences of the position they assume. They are estopped to deny the reality of the state of things which they have made appear to exist, and upon which others have been led to rely. Sound ethics require that the apparent, in its effects and consequences, shall be as if it were real, and the law properly so regards it." (*Casey* v. *Galli*, 94 U. S. 673.) This principle was followed in *Davis* v.· *Moore* (130 Ark. 128), which was similar to this case. The same principle was upheld in *Norman* v. *Federal Mining & Smelting Co.* (180 App. Div. 325). Appellants take the position that they, being non-residents of the State of Arkansas, cannot be held to have had constructive notice, no actual notice having been had. · Having reached the conclusion that notice was not required under said act, if I am right, the question is not of importance. Interest was properly charged from the time the assessment was payable. (*Davis* v. *Moore* and *Graham* v. *Davis*, 130 Ark. 128, *supra.*) To the same effect is *Mahoney* v. *Bernhard* (45 App. Div. 499, 502). The right to maintain this action is based upon matters foreign to the administration of the estate, and costs were properly taxed and allowed. (*Dunn* v. *Arkenburgh*, 48 App. Div. 518; Code Civ. Proc. § 3246, down to the exception, which exception is not the case here.)

The judgment should be affirmed, with costs.

Judgment unanimously affirmed, with costs.