POCH *v.* TAYLOR.

4-2761

Opinion delivered December 12, 1932.

*Tom F. Digby,* for appellant.

*Robinson, House & Moses* and *W. H. Holmes,* for appellee.

*Roberts & Stubblefield, amici curiae.*

Smith, J. Suits were brought by the Bank Commissioner (who alleged that he was liquidating the assets of the Federal Bank & Trust Company) against J. K. Poch, Jr., and E. O. Manees, Sr., to enforce an assessment against them as stockholders in said bank. The cases were consolidated and tried together.

Poch filed an answer, in which he denied all the material allegations of the complaint, and alleged that all of the assets of the insolvent bank had been sold and assigned before the Bank Commissioner had taken charge of said bank, and that the assets of said bank were being liquidated by trustees for said assignees before the plaintiff Bank Commissioner attempted to take charge of the affairs of said bank, and that said trustees have, since that date, continued to manage and liquidate said bank. Manees filed a similar answer, and alleged, in addition, that he had sold his stock in the bank and the same had been transferred upon the books of that corporation before the Bank Commissioner had taken charge thereof. It is undisputed that prior to December 1, 1930, Poch owned stock in the bank of the par value of $2,000, and Manees owned stock of the par value of $8,000.

On November 18, 1930, an agreement was entered into between the directors of the Federal Bank & Trust Company, as parties of the first part, and the other banks in the cities of Little Rock and North Little Rock, comprising the Little Rock Clearing House Association, as parties of the second part, to the following effect: It was recited that the Federal Bank was experiencing a heavy withdrawal of deposits, which endangered its ability to continue in business, and that it had applied to the clearing house for assistance to enable it to remain open.

In consideration of the terms recited, it was agreed that:

"(1)   First parties will cause Federal Bank & Trust Company to pledge to second parties all of its assets for the security of second parties' undertakings herein.

"(2)   Second parties hereby severally guarantee and promise each in the proportion hereinafter set out,

to advance to Federal Bank & Trust Company sufficient funds as a loan, if necessary, so that each depositor of said company, as of the close of business on November 18, 1930, (except depositors of public funds or other deposits now secured as provided by law) may be paid upon demand.''

The third paragraph names the proportionate parts of the advances which each of the member banks of the clearing house agreed to make.

''(4) The loans herein provided for to be made to Federal Bank & Trust Company by second parties will be evidenced by notes of Federal Bank & Trust Company executed to T. W. Kirkwood, as trustee, payable upon demand, at six per cent. (6%) interest, and specially secured by collateral from the general assets, acceptable to second parties. The collection of the proceeds of such collateral will be held in a separate account to the credit of T. W. Kirkwood, trustee, and applied as payment to second parties or loaned as approved by second parties for their account. Second parties will nominate an agent to serve with the executive committee of Federal Bank & Trust Company for that purpose.

''(5) This guarantee and promise shall continue in force as to such deposits, as of the close of business on November 18, 1930, for a period of ninety days (90) from this date. Each of first parties hereby guarantees second parties, up to the amount set opposite his signature, against any loss on account of such loans. It is expressly agreed, however, that the amount of the respective guarantees of the parties of the first part hereto is for the use and benefit of all of said parties of the second part collectively, to be prorated among them in proportion to the amount that each of said second parties shall loan to Federal Bank & Trust Company, as provided for herein.

''(6) It is further agreed that, if said Federal Bank & Trust Company shall be forced to suspend business and liquidate its affairs, such liquidation shall take place according to the laws of Arkansas, and that the parties

of the second part shall be paid, first, out of the assets so pledged; second, out of the general assets of said bank; third, out of the statutory liability of all of its stockholders, including the first parties; and fourth, by recourse upon this guaranty of the signers hereto and according to its terms.

"(7) First parties agree that all due proceedings will be taken at all times by the board of directors of the Federal Bank & Trust Company for the due authority for such loans and for securing second parties according to the terms hereof.

"(8) It is agreed that this document is prepared in an emergency, and the first parties hereto agree to execute such supplements, additions and redrafts hereof as may be required by second parties as necessary to more fully express and carry out the intentions of the parties hereto, and execute such instruments in such number as may be necessary to supply each of second parties with a signed copy hereof."

This eighth paragraph contains the names of the directors and stockholders contracting as parties of the first part, and opposite each name was written: "Amount of the respective guaranties of the parties of the first part hereto." Opposite the name of Manees was written $2,500, while $2,000 was written opposite that of Poch. Both were directors of the Federal Bank & Trust Company.

Upon the execution of this agreement the lending banks made the advances contemplated therein. The "run" on the Federal Bank & Trust Company continued in increasing volume until finally its officers decided to close its doors and to pay all depositors in full. This was done on or about January 15, 1931, and all depositors were invited to withdraw their deposits, and the lending banks furnished the money required for that purpose. Practically all of the deposits were withdrawn.

In order to secure the advances made by the lending banks, the assets of the Federal Bank & Trust Company were pledged to five trustees, two being named by

the parties of the first part, two by the parties of the second part, and these four trustees selected the fifth.

Although the Federal Bank & Trust Company ceased to function as a bank after January 15, 1931, it proceeded to liquidate its affairs through the five trustees. This method of liquidation continued until August 10, 1931, at which time the State Bank Commissioner took over its assets for the purpose of liquidation, and levied the assessment against the stockholders which culminated in this lawsuit.

Judgment was rendered against both Poch and Manees for the amounts sued for. For the reversal of this judgment, it is first insisted that the suit is, in effect, one by the assignees of the assigned liability of the stockholders, and that such suits cannot be maintained, as such suits can be maintained only by the State Bank Commissioner, and cases are cited to that effect.

We think, however, that the undisputed testimony shows that there was no sale of any of the assets of the insolvent bank. The transaction was not a sale, but a loan of money, with a pledge, as security therefor, of the bank's assets, including the respective amounts guaranteed by the directors and stockholders who signed the original contract pledging the assets.

No one questions the good faith of the transaction. It was an attempt to keep afloat a sinking corporation, and there is nothing about the transaction which operated to discharge the stockholders from the liability imposed upon them by law. Depositors appear to have been paid, but they were paid with borrowed money, and there appears to be other creditors. In any event it is definitely settled that the action of the Bank Commissioner in levying an assessment against the stockholders is conclusive as to the necessity for the call and the amount to be assessed against the stockholders. *Davis v. Moore*, 130 Ark. 128, 197 S. W. 295; *Aber v. Maxwell*, 140 Ark. 203, 215 S. W. 389.

The liability of stockholders is not confined to recompensing depositors. By § 702, Crawford & Moses'

Digest, it is provided that "the stockholders of every bank doing business in this State shall be held individually responsible equally and ratably, and not one for another, for all contracts, debts and engagements of such bank to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such stock."

It is our opinion that, under the facts stated, the lending banks were not purchasers, but were creditors. The greatest advantage promised the lending banks under the contract was the return of their money, with six per cent. for its use, and as creditors they are entitled to participate in the proceeds of any money derived from the stockholders under the Bank Commissioner's assessments.

It appears that on December 15, 1930, E. O. Manees transferred $7,500 worth of his stock to his son, E. O. Manees, Jr., and that new stock was issued by the officers of the Federal Bank & Trust Company to the transferee, and the bank paid a dividend to him in January, 1931. In support of the validity of this transaction, Manees offered to prove that Solon Humphreys, as his representative, discussed with a Deputy Bank Commissioner the question whether the Banking Department would approve the transfer of stock owned by Manees to his son, and was assured by the Deputy Bank Commissioner that such transfer would be approved by the State Banking Department. This proffered testimony was excluded, for the reason, no doubt, that, although the Commissioner or his deputy had stated the transfer would be approved, it had not been approved, certainly not in the manner provided by law.

By § 2 of act 102 of the Acts of 1929 (Acts 1929, page 510), it is provided that "whenever any stockholder may wish to transfer his stock, certificates in duplicate of such transfer, signed by the president and cashier or secretary, and setting forth the name and residence of the transferrer and transferee, shall first be sent to the Bank Commissioner," and that officer is required to in-

dorse thereon his approval or disapproval of the transfer, and to forward the certificate bearing his indorsement to the bank, and the bank files the certificate "with the clerk of the county in which the bank is located" for record. The statute further provides that: "If a transfer is not approved by the Bank Commissioner as above provided, the transferrer's liability as a stockholder under § 702 of Crawford & Moses' Digest of the Statutes of Arkansas shall continue for one year, notwithstanding the transfer; but a transfer may be effectual to transfer title to the stock (and may, if filed with the county clerk as aforesaid, be effectual as against creditors of the transferrer) notwithstanding the Commissioner's disapproval of the transfer."

As the excluded testimony did not propose to show a compliance with this statute, no error was committed in excluding it.

In a brief filed by *amici curiae*, it is insisted that so much of § 2 of act 102 of the Acts of 1929, above quoted, as extends for a period of one year the double liability of the holder of bank stock under § 702, Crawford & Moses' Digest, who transfers such stock without the approval of the Bank Commissioner, is violative of § 23 of article 5 of the Constitution. This section reads as follows: "No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."

The portion of § 2 of the act 102 of the Acts of 1929 which is said to offend against the section of the Constitution, above quoted, is set out above, and we do not think it is violative of the inhibition of the Constitution.

In the case of *Farris v. Wright,* 158 Ark. 519, 250 S. W. 889, it was said: "This court has often considered the application and effect of this provision of the Constitution, and in each instance has adhered to the rule that 'when a new right is conferred or cause of action given, the provisions of the Constitution quoted require

the whole law governing the remedy to be re-enacted in order to enable the court to effect its enforcement,' but that if the statute 'is original in form, and by its own language grants some power, confers some right or creates some burden or obligation, it is not in conflict with the Constitution, although it may refer to some other existing statute for the purpose of pointing out the procedure in executing the power, enforcing the right, or discharging the burden.' (Citing cases)." See also *Grable* v. *Blackwood,* 180 Ark. 311, 22 S. W. (2d) 41.

We have not copied § 2 of act 102 of the Acts of 1929 in full, but it suffices to say that it is original in form and prescribes the manner in which bank stock must be transferred and continues the burden or obligation of a stockholder upon one who sells his stock without complying with its provisions, this obligation being defined in an existing statute, to which reference was made. Section 702, Crawford & Moses' Digest, was not affected by the act of 1929, except that the burden of double liability imposed by it was made to continue for a year against stockholders transferring their stock without complying with the act of 1929. Section 2 of act 102 of 1929 is therefore valid legislation. *Davis* v. *Moore, supra; Karraken* v. *Ernest,* 4 Fed. (2d) 404.

The judgment of the court below is correct, and it is therefore affirmed.