DONAGHEY *v.* WASSON.

4-3881

Opinion delivered May 27, 1935.

*Carmichael & Hendricks,* for appellants.

*Cockrill, Armistead & Rector,* for appellee.

BUTLER, J. The Bank Commissioner of the State of Arkansas, having taken charge of the Bankers' Trust Company and the Bank of Commerce as insolvent banking corporations, levied a one hundred per cent. assessment against the stockholders of said corporations, among whom were George W. Donaghey, James M. Stewart and George B. Rose. This suit was instituted in the names of those persons in their own behalf and for others similarly situated against Marion Wasson, Bank Commissioner of the State of Arkansas, to enjoin the latter from bringing suit against them and asking for the appointment of a master. To the complaint as originally filed and to an amendment thereto, demurrers were interposed, and, without waiving the demurrers, defendants answered and cross-complained, alleging the assessment on the stock previously made and praying for judgment in the amount of the several assessments. Later, George B. Rose, with the assent of the defendants and cross-complainants, had his name stricken from the complaint. The cross-complaint as to him was thereupon dismissed. No reply was made to the cross-complaint. The

cause was submitted to the trial court upon the pleadings, the demurrers were sustained, and, the plaintiffs refusing to plead further, the court dismissed the complaint and rendered judgment against the plaintiffs in conformity with the prayer of the cross-complaint.

The substance of the allegations of the complaint as amended may be thus stated: that the Bankers' Trust Company and Bank of Commerce were solvent and going concerns in February and March, 1933; that without complying with § 51, act 113, of the Acts of 1913, the Bank Commissioner arbitrarily suspended the operation of said banks, and afterwards took charge of them as insolvent institutions; that he permitted the organization of new banks and authorized the transfer of good assets of the former banks without consulting their stockholders, all the while permitting their management to remain in the hands of their former officers; that, if the assets had been transferred for a fair value, the assessment on stock would not have been necessary; that the action of the Commissioner in suspending the operation of the banks caused whatever loss was sustained, and, without such action, they would not have failed; that no investigation was made by the Commissioner, or by any one for him or by any court prior to his action suspending the banks and prior to his final action in taking over the same as insolvent institutions, and that in all proceedings the Commissioner was acting as the agent of the depositors and other creditors which worked an irreparable injury to the plaintiffs; that the call of the stock assessment was made without any judicial determination for the necessity therefor and same was unnecessary; that plaintiffs should have an appraisal and an accounting of the assets of the closed banks.

It was further alleged that plaintiffs became the owners of the capital stock of the banks before the passage of § 36 of act 113 of the Acts of 1913, fixing double liability on shares of the capital stock, and that, if the provisions of said statute as to the plaintiffs were enforced, it would offend against the Constitution of the United States and the State of Arkansas, in that the same impaired the obligation of contract existing and entered

into between the incorporators of the said banks and the State prior to the passage of the aforesaid act. The further allegation is made that act 15 of the Special Session 1933, approved August 25, 1933, repealed § 36 of act 113, *supra,* thus absolving owners of bank stock of the double liability imposed by said § 36.

Appellants present and urge four propositions, any one of which, it is contended, is sufficient to justify the reversal of the decree of the chancery court.

■ The first proposition is that the closing of the banks involved in the instant case was a part of a plan by which all banks in the United States were closed— the national banks by presidential proclamation and other banks by the State agencies which had supervision of State banks and banking. Appellants say that the reason for this action was the impelling force of public necessity of which we judicially know. It is argued that the double liability imposed on stockholders in banks was to insure the watchfulness of the boards of directors to the end that no improvident loans be made and the interest of the institutions be otherwise insured. Appellants contend that this liability and duty, however, was applicable only in normal times and under normal conditions, and where the cause of the conditions over which the managing board had no power and which the stockholders could not reasonably foresee, but the result of many obscure and unpredictable causes resulting in the general collapse of banks, the double liability statute ought not to, and does not, govern; hence, as the banks were closed because a great and general emergency made it necessary, the stockholders should be relieved from any and all liability. Authorities are cited which take cognizance of the "depression" and "great emergency," among these are *Blaisdell* v. *Home, etc., Ass'n,* 189 Minn. 422, 249 N. W. 334; the opinion of the Supreme Court of the United States upholding that decision; *Norman* v. *B. & O. R. Co.,* 293 U. S. 546, 55 S. Ct. 407, and *U. S.* v. *Bankers' Trust Co.,* 293 U. S. 548, 55 S. Ct. 407. From our decisions we are cited to *Hartford Fire Ins. Co.* v. *State,* 76 Ark. 309, 89 S. W. 42; *Reinman* v. *Rawls,* 188

Ark. 983, 68 S. W. (2d) 470; and *Pope v. Shannon, ante* p. 441. These cases support the principle that notorious public events which make current history are among the matters proper to be considered by courts in seeking a moving cause for the enactment of a statute and as an aid for discovering the legislation intent, where, from the language of the statute, the same may be doubtful. These cases also sustain the legislative power (seldom invoked, and always to be exercised with care) to put in motion "the law of necessity" when conditions arise and continue which its exercise make imperative for the preservation of the public health and safety. None of these cases, however, carries the doctrine of "necessity" to the extent that by its evocation laws are to be annulled and fixed liabilities abrogated.

In developing their argument, counsel for appellants fail to notice this important particular, *i.e.,* the necessity for the general closing of banks, including the Bankers' Trust Company and the Bank of Commerce, arose not primarily from an economic situation, but on account of the state of mind of depositors in one of the States which resulted in an unreasoning panic and "run" on the banks of one of its principal cities. This panic rapidly spread until it threatened to involve the entire nation, and made the restriction of banking operations necessary to give time for reflection and for the calming of the fears and excitement of the people. That this was soon accomplished is a part of the history of the times. The restrictions were soon removed from all banks which could demonstrate their solvency. A great number of banking institutions were able to make this showing and resumed business—some by sacrifices of the stockholders, and others without such aid. The latter class were those which had, before the great depression, conducted their affairs on sound and legitimate principles, and are now solvent and going institutions. Unhappily, the banks in which appellants are stockholders were unable to continue in business, not, it is clear, on account of the temporary suspension of their operations, but from causes antedating that event.

The statute clothes the Bank Commissioner with authority to ascertain and declare the financial condition of banks and, if insolvent, to take them over for liquidation. If the banks involved in the instant case were in fact solvent and the action of the Bank Commissioner in taking them over as insolvent institutions was arbitrary and unnecessary, as alleged, then was the time for appellants to intervene in the insolvency proceedings and not in a collateral attack challenge his good faith and judgment. *Davis* v. *Moore,* 130 Ark. 128, 197 S. W. 295.

■ The second contention for reversal is based on the fact that the stock of appellants was issued to them prior to the passage of act 113, *supra,* and at a time when there was no stockholders' liability beyond the value of the stock itself, and that the retroactive effect sought to be given § 36 of said act is void on constitutional grounds. Counsel concede that the case of *Davis* v. *Moore, supra,* is opposed to this view, but urge that this decision is erroneous. This position is grounded on decisions of the courts of Arizona and Oregon (*Dagg* v. *Hammons,* 34 Ariz. 445; *Haberloch* v. *Tillamook County Bank,* 134 Ore. 279, 293 Pac. 927) construing and applying constitutional provisions of those States similar to our own; also, the case of *Dartmouth* v. *Woodward,* 4 Wheat. 518. It is further suggested that the doctrine of *Davis* v. *Moore, supra,* has been impaired by the recent decision of this court in the case of *Jeffries* v. *Wasson,* 187 Ark. 519, 60 S. W. (2d) 903.

We cannot agree with the interpretation placed by counsel on the last named case. The sole question there decided was the power of the chancery court to direct in a proper case a sale of the bank's assets over the objection of the Bank Commissioner. It was the contention of those denying this power that our banking laws in their entirety were borrowed from the National Banking Act, and that prior to the adoption of that act by this State the Federal courts had construed the same holding that the courts had no authority to interfere with the disposition of the assets of insolvent banks in the hands of the representative of the comptroller. In answering that contention, this court quoted the applicable portion of the

National Banking Act pointing out its dissimilarity to that part of our statute relating to the same subject and holding that because of this our courts were not concluded by the construction of the Federal courts. This, however, was far from disapproving the holding in *Davis v. Moore, supra,* to the effect that § 36 of act 113, *supra,* was borrowed from the National Banking Act and with it the construction placed thereon by the Federal courts before its adoption by our Legislature.

In *Davis* v. *Moore, supra,* attention is called to § 6 of art. 12 of our Constitution. In that connection, the court said: "Subscribers for or purchasers of stock in a banking corporation prior to the enactment of the statute now under consideration took their stock charged with notice of the power of the lawmakers to amend the provisions of the law with respect to the terms upon which corporations may do business. This is so by virtue of the express reservation in the Constitution of the power of the lawmakers to amend or revoke charters, and there can be no legal objection to legislation of this kind which does no injustice to the holders of shares of stock in a corporation." In discussing the retroactive effect of the statute, the court pointed out that § 4 of the act fixed a period of time after the act went into effect within which all banking corporations might signify their acceptance of the new terms or discontinue the business sought to be regulated by the statute. In commenting upon this provision, the court, among other things, said: "The statute, as we have already seen, does not impose an absolute liability on the shareholder of stock, nor does it compel the corporation or its stockholders to accept the provisions of the statute. It does not operate in any sense as a confiscation of the shares of stock, for the corporation may be wound up and in that way the property interest of the stockholders preserved, or an individual stockholder may sell his stock if he objects to the corporation continuing business under the new terms prescribed. It cannot be assumed that the new terms prescribed by the statute operate as an impairment or depreciation of the value of the stock, and that an objecting stockholder would be unable to dispose of his

shares of stock at full value." That case has been followed in the cases of *Aber* v. *Maxwell*, 140 Ark. 203, 215 S. W. 389; *Lange* v. *Taylor*, 184 Ark. 105, 40 S. W. (2d) 781; *Poch* v. *Taylor*, 186 Ark. 618, 54 S. W. (2d) 994; *White* v. *Taylor*, 187 Ark. 1, 58 S. W. (2d) 210; *Fee* v. *Taylor*, 187 Ark. 204, 58 S. W. (2d) 944; *Wasson* v. *Castetter*, 187 Ark. 348, 52 S. W. (2d) 1033.

With deference to the views of courts of foreign jurisdiction cited by learned counsel for appellants, we think the reasoning of the court in *Davis* v. *Moore, supra,* is sound, and we adhere to the conclusions here reached.

■ As to the third contention of appellants that § 36 of act 113, *supra,* was impliedly repealed by act 60 and act 61 of the regular session of the General Assembly of 1933 and by act No. 15 of the Special Session of 1933, approved August 25, 1933, it is necessary that little be said. The clear intention of acts 60 and 61, *supra,* was that they should be in aid of, and supplemental to, the existing banking laws, no part of which should be repealed except where such intention was made manifest by express provision, or where any part of the later legislation was repugnant to the existing laws. Section 13 of act No. 60, *supra,* provides: "This act is cumulative of the banking statutes now in effect and shall not be held or construed to repeal any law now in force save such as are hereby expressly repealed and such as are in direct conflict herewith." The purpose of act No. 61, *supra,* was to supplement existing laws relating to bank and trust companies, to supply defects and omissions in the laws relating to the liquidation of closed banks, to more adequately provide for the security of public funds, and, in instances of liquidation and distribution of the assets of closed banks, to provide for immediate and adequate investigation to prevent the loss of the rights of creditors and stockholders by reason of any irregularities which might have occurred. This statute contains no repealing clause, and in no place deals with the subject covered by § 36 of act 113, *supra.* That it was not the intention of act 15 of the Special Session of 1933 to repeal said § 36 of act No. 113 appears from the language of § 2 (a) of said act No. 15 which is as follows:

"When bank stock is converted as provided for in § 2, nothing in this act shall be construed as to relieve in any manner the double liability existing against owners of stock in old banks and/or trust companies in which the stock is being converted." A fair consideration of the purpose of these acts from the language employed makes it evident that there was no intention to repeal the double liability statute.

■ Appellants lastly contend that the Bank Commissioner, in taking over the banks in question as insolvent institutions and in levying the stock assessment, was the agent of the creditors and not of the stockholders. We are somewhat uncertain as to whether or not it is the contention of appellants that the fact that the Bank Commissioner was such agent would render his declaration of the insolvency of the banks ineffectual and his stock assessment void. We do not think that the Bank Commissioner is the agent or representative of any particular interest in his general supervision of banks, or of any one class in the process of the liquidation of insolvent banks. In the latter instance, he occupies precisely the same relation to the stockholders, creditors, and the general public, as did the bank itself while it was a going concern. Therefore it is his duty to protect and promote the interests of all classes, and he may be said to be the agent of them all. This, we think, is the clear intent of the statutes relating to the duties of the Bank Commissioner and the effect of our decisions.

In conclusion we quote again from the case of Davis v. Moore, supra: "The provisions of our statute are almost identical with the National Banking Act with regard to the enforcement by the Bank Commissioner of the double liability of stockholders. Neither of the statutes provides in detail how the liability shall be enforced, but each of them does provide that it shall be enforced under our statute by the Bank Commissioner, and under the National Banking law by the receiver appointed by the Comptroller. Each of the statutes declares the double liability in precisely the same language and authorizes the Bank Commissioner, or the receiver appointed by the Comptroller, as the case may be, to take charge of

the assets of the bank and distribute the same. The Supreme Court of the United States in a number of cases, beginning with the case of *Kennedy* v. *Gibson*, 8 Wall. 498, has decided that the decision of the comptroller as to the insolvency of the bank, the necessity for imposition of double liability on the stockholders and the amount thereof, is conclusive, and cannot be controverted by the stockholders in a suit brought by the comptroller to enforce the liability. \* \* \* Of course, we are speaking now with reference to an assessment made by the commissioner free from any charge of fraud or collusion. It is unnecessary to determine now what the remedy of a stockholder would be where a charge of that kind is made against the good faith of an assessment.''

It follows from the views expressed that the decree of the trial court should be, and it is, hereby affirmed.