CITIZENS BANK & TRUST COMPANY *v.* RAINES.

Opinion delivered July 10, 1916.

1. INSOLVENT BANKS—DISPOSITION OF ASSETS.—Act 113, Acts of 1913, provides for the disposition of the assets of insolvent banks under the directions of the chancery court; Kirby's Digest, § 6236, providing the manner of foreclosing mortgages and other liens, and the sale of property thereunder, has no application to the sale of the assets of an insolvent bank, which are in process of liquidation under Act 113, Acts of 1913.

2. INSOLVENT BANKS—SALE OF ASSETS—PRIVATE SALE—APPROVAL—DISCRETION OF CHANCERY COURT.—The assets of a certain bank were in the hands of the State Bank Commissioner for liquidation under Act 113, Acts of 1913; the chancery court ordered a private sale of certain real estate, but the deputy commissioner offered the same for sale at auction. Appellee bid in the property; other persons thereafter offered a greater sum for the same. *Held,* in approving the sale to appellee, that the chancery court abused its discretion, and that it should have refused to confirm the sale in view of its order that a private sale be had, and that a better price had been offered; it appearing also that appellee's bid was for an amount under the value of the land.

Appeal from Nevada Chancery Court; *Jas. D. Shaver,* Chancellor; reversed.

### STATEMENT BY THE COURT.

The Citizens Bank & Trust Company, of Prescott, Arkansas, on the 27th day of July, 1915, went into liquidation under the Bank Commissioner, under the provisions of Act 113, approved March 3, 1913, Acts of 1913. Thomas C. McRae, Jr., was designated as special bank commissioner. He applied to the chancery court for an order as to the disposition of certain of the bank's assets. The court made an order directing McRae to sell all of the bank's real and personal property at private sale. The order provided "that all of such sales shall be submitted to the court for its approval before the sale is consummated."

McRae, after consulting with the stockholders and others interested in the assets of the bank, on the 12th day of October, 1915, gave notice by regular advertisement in a newspaper that he would, on the 26th day of

November, 1915, offer the real estate, which was described in the notice of sale, at the north door of the courthouse in the city of Prescott, upon terms of one-half cash and the balance on credit of three months. The notice specified that the purchaser would be required to give bond with approved security, and that a lien would be retained on the property until the same was paid. He made the sale, and in his report stated that he attended and offered the property for sale at public outcry. He gives the names of the purchasers and a list of the lands sold, and among the purchasers was one E. E. Raines, the appellee. The land was struck off to him at $6,447.67. He purchased subject to a mortgage for $5,200, and paid the balance $1,247.67, in cash.

In the Commissioner's report he states that the attendance was good, and many of the stockholders of the bank were present; that on the 30th of November, 1915, at a meeting of the stockholders of the Citizens Bank & Trust Company, Geo. F. Kress and A. H. Smith agreed to increase the bid made by E. E. Raines for the lands purchased by him $752.33, thus giving to the bank a net sum above the incumbrance amounting to $2,000, instead of $1,247.67, the amount bid by Raines.

McRae recommended the approval of all the sales except the ones made to Raines, Jake Suckle and W. V. Tompkins, and recommended that the property sold to Raines and Tompkins be resold. Raines filed exceptions to the report of the receiver, setting up that he had purchased at the sale and had complied with the requirements of the receiver by putting up the amount of his bid. He stated that the directors of the bank and trust company were present at the sale, and had an opportunity to bid, but refused to do so, and that Kress and Smith were also present at the sale, and did not bid.

Kress and other stockholders of the bank and trust company replied to the exceptions of Raines, in which they set up that they were given to understand by the Bank Commissioner before the sale that any figures that were unsatisfactory would be reported adversely and the property again offered for sale; that immediately follow-

ing the offering of the property for sale and the bid of Raines, Kress, for himself and other stockholders, proposed to raise the bid of Raines from $1,247.67 to $2,000 for the bank's equity, which offer they were ready to make good; that the offer of $1,247.67 made by Raines was only $3.10 per acre, and that the land was reasonably worth $7 per acre.

The court heard the testimony of the Commissioner on the exceptions of Raines and the reply thereto. McRae testified substantially to the effect that, after consulting with the stockholders of the bank, they doubted the wisdom of offering the body of land for sale at that time; that he told them that if the bids were unsatisfactory, the sale would not be approved and the property would be reoffered. He understood that if the offers of bids were not satisfactory, he could report against the approval, and the court would not approve the sale; that after the sale the stockholders held a meeting and the increased bid was made as set forth in his report; and therefore he recommended that the sale to Raines be not approved.

He exhibited a letter from the State Bank Commissioner, written before the sale took place, suggesting that he could go ahead and make it, but that unless the lands brought a good price that the department would not recommend that the court approve the sale.

The president of the bank testified, among other things, that he was present at the sale and permitted the bids of Raines and others to pass at the prices offered by the bidders, believing that the deputy commissioner would be permitted to re-offer the property if the bid was not satisfactory.

There was also testimony to the effect that $3 per acre was the assessed value of the land, which was about 50 per cent. of its actual value. The testimony showed that the auctioneer announced to the crowd present at the time the lands were sold that all bids would be submitted to the court for approval before the sale would be consummated.

The court, after hearing the evidence, found that the sale was fairly and legally conducted, and declined

to disapprove the sale. The offer of Kress and others to guarantee the bank the sum of $2,000 for its equity, instead of the sum of $1,247.67, which it would have received under the bid of Raines, was rejected. The court entered judgment confirming the sale to Raines, and the appellants duly prosecute this appeal.

*Carmichael, Brooks, Powers & Rector,* for appellants.

1. There was no sale and that which has not occurred can not be approved. The order directed a *private sale,* but this was a public sale. The sale was not on a credit. Kirby's Digest, § 6236.

2. The sale was not on a credit. 27 Ark. 294; 34 *Id.* 55-63; 37 *Id.* 43; 31 Id. 229-236; 69 N. W. 388; 65 Atl. 367. The sale was void.

*Hamby & Hamby,* for appellee.

1. A sale, approved by the court, will not be set aside for inadequacy of price, unless grossly inadequate, 47 Ark. 93; 65 *Id.* 152; 77 *Id.* 216. But this plea is abandoned here. 122 Ark. 224; 51 Ark. 351; 64 *Id.* 305; 121 Ark. 64.

2. The sale was made under the banking act. Acts 1913, No. 113. This act authorizes a sale *on such terms as the court may direct. Ib.,* § 53. This section does not conflict with section 6236 of Kirby's Digest.

3. No objection was made to the sale. Objections can not be raised here for the first time. 64 Ark. 305; 121 Ark. 64; 51 Ark. 351.

4. Appellants are estopped. 38 Ark. 572.

WOOD, J., (after stating the facts). 1. When the State Bank Commissioner takes charge of an insolvent bank for liquidation under Act 113, *supra,* "upon the orders of the chancery court in the county in which it (the bank), is doing business, he may sell all its real and personal property on such terms as the court shall direct." Section 53. The act is special statutory proceedings for the disposition of the assets of insolvent banks under the directions of the chancery court. Section 6236 of Kirby's Digest, providing the manner of foreclosure of mortgages

and other liens, and the sale of property under such foreclosure, has no application to sales of the assets of an insolvent bank that are in process of liquidation under the above act.

It is not shown that the real estate in controversy was sold under any mortgage or other lien. The purpose of Act 113, *supra*, was to enable the chancery court to make such disposition of the insolvent bank's assets as would best subserve the interests of all concerned, and the court is unfettered by any limitations as to the terms upon which it may order the disposition of such assets.

(2) Section 6236 of Kirby's Digest, and section 53 of Act 113, *supra*, relate to different subjects and there is no conflict between them. The sale of an insolvent bank's assets not under mortgage or other lien, when in process of liquidation under Act 113, must be governed alone by that act. It appears that the deputy commissioner, instead of acting under the orders of the court to make a private sale, proceeded to advertise the land and sold the same at public sale. The court, however, found that the sale, as made by the deputy commissioner was fairly and legally conducted and confirmed and approved the sale, thus treating the sale as having been made in compliance with the orders of the court. This finding of the chancellor was clearly against the undisputed testimony.

The undisputed testimony of the deputy commissioner who conducted the sale, was to the effect that he understood that he had the authority to offer the lands in the manner which he did, and if the bids made upon the lands were not satisfactory, that he would so report to the court, and that the court would not approve the sale; that he so advised members of the stock holder's committee with reference to the sale. The testimony of the president of the bank was to the effect that the deputy commissioner consulted with him about the sale, and that he was opposed to it, but withdrew his objections when given to understand by the deputy commissioner that any bids would be turned down if the same were unsatisfactory, and upon his representation that the property would be re-offered; that he attended the sale under this

impression and permitted the bids of the parties who bought these lands to pass; believing that the lands would be re-offered for sale, as the bids were not satisfactory. The parties who purchased the lands, a few days before, had offered the sum of $1 per acre at private sale for the bank's equity, whereas, at the sale their bids were 40 cents per acre less.

The testimony showed that the bid of appellee was $3.10 per acre, or about the assessed value of the land, which was reasonably worth $6 or $7 per acre.

The court should have adopted the recommendation of the deputy commissioner in his report and disapproved the bid of Raines. The court's order directing the sale did not specify any terms further than that the commissioner should sell the real property at private sale. In the order the court provided that "all such sales shall be submitted to the court for its approval before the sale is consummated." Under the law and under the order of the court the sale was not consummated until the chancery court approved the same. The plain purpose of the law was to enable the chancery court to conserve the best interests of all concerned in the assets of the insolvent bank, and to make the most advantageous disposition of same possible. While the court is thus given large discretion in the manner in which it may dispose of these assets, yet it is not an unlimited judicial discretion, but one that can be controlled when abused.

It clearly appears that it was not to the best interest of those who were directly concerned in the manner of the disposition of the bank's assets to approve this sale. On the contrary, instead of husbanding the resources of the bank, so as to preserve and protect the interests of those who are directly concerned, the order of the court approving this sale would have precisely the opposite effect. The court therefore abused its discretion in confirming the report of the commissioner and treating the acts of the commissioner with reference to the sale of the lands as a completed sale to the appellee.

Appellee invokes the rule stated in previous decisions of this court that mere inadequacy of price in the absence

of fraud does not afford grounds for withholding confirmation of a public judicial sale. *Colonial & United States Mortgage Co.* v. *Sweet*, 65 Ark. 152; *George* v. *Norwood*, 77 Ark. 216. That rule does not, however, apply in the present case for the reason that the court ordered a private sale (of which fact the pruchaser was fully advised), and in considering the question of confirmation, it should have been treated as a private sale.

The reason for the rule has been stated by this court in the following language: "Courts have adopted, as a wise public policy, the rule that confidence in the stability of judicial sales should be maintained, so that competitive bidding may be encouraged by the assurance that, in the absence of fraud or misconduct, the highest bidder will be accepted as the purchaser of the property offered for sale." *George* v. *Norwood, supra.* The reasons thus given do not apply to a private sale, for there is no such thing as competitive bidding in conducting that kind of sale which constitutes mere negotiations ending in the final approval or disapproval by the court.

It does not follow, however, that the court should have accepted the increased bid of Kress and others, and treated their bid as a final offer and a consummation of the sale. The undisputed testimony clearly shows that there was no intention upon the part of the commissioner by what he did to complete a sale to any one. The deputy commissioner recommended that the property which he had sold to Raines be resold. The court should have found that the commissioner had not proceeded to make the sale in the manner directed by its order, and should have adopted the recommendation of the deputy commissioner and ordered the land resold.

The decree of the court is therefore reversed and the cause is remanded for further proceedings according to law, and not inconsistent with this opinion.