JEFFERIES *v.* WASSON.

4-3096

Opinion delivered May 29, 1933.

520

*Fred A. Isgrig,* for appellant.

*Trieber & Lasley* and *Sam Rorex,* for appellee.

McHANEY, J. Appellants are depositors in the insolvent American Exchange Trust Company of Little Rock, hereinafter called the bank, now in process of liquidation by the Bank Commissioner, under the jurisdiction of the Pulaski Chancery Court. They filed an intervention in the liquidation proceedings pending in said court, seeking an order of sale of the remaining assets of said bank, in which they alleged that they were depositors therein when its doors were closed in November, 1930, and its affairs taken over by the Bank Commissioner for liquidation; that since said time dividends have been paid at irregular intervals, totaling 35 per cent.; that $428,000 has been borrowed from the Reconstruction Finance Corporation, and the bank's assets pledged to secure said loan, which is a prior lien and must be paid before any further dividends can be paid depositors; that, at the present rate of liquidation, it will require two or three years to repay said loan; that the interest and expense of liquidation amount to $5,000 per month; that an offer to purchase the remaining assets of said bank has been made on these terms. To pay the R. F. C. loan at once and an additional amount in cash equal to 5 per cent. of all deposits, and in one year an additional 5 per cent. or a total for depositors of 10 per cent., one-half in cash and the other half within one year, both of which would be paid before any further dividends could be expected under liquidation; that they believe this to be a fair offer and is the full value of the assets; and that to decline the offer would work injury and damage to the depositors. Other allegations of the intervention are: ''That the Bank Commissioner has rejected said offer, and at the time thereof stated that he personally believed that the offer was fair and reasonable, and that it is to the best interest of depositors that same be accepted; that depositors would, in his opinion, receive more under said sale than they probably would receive under the liquidation; and that, if he personally owned said assets, he would be glad to accept

said offer; that, if he were an investor in that class of securities, he would not be willing to participate in the offer; that he had had an appraisal made of the assets of said bank by his assistants, and that the total value of said assets as shown by the appraisal was not in excess of the amount offered as stated above; and that his refusal to accept the offer is based entirely on the ground that the depositors, in his opinion, are opposed to the sale; that he had previously given notice in the newspapers that the offer had been made, and that he wanted the views of depositors, and that he would abide by the decision of the depositors, and in response to said notice had received many more letters against the sale than in favor of it, and that he therefore would reject the offer.

"That said statements of the Bank Commissioner are his views and findings as to the value of the assets of said bank. That the Bank Commissioner has wholly failed and refused to give the depositors the benefit of this information; that less than one per cent. of the total number of depositors and much less than one per cent. in amount of deposits have expressed their wishes to the Bank Commissioner on the subject; and that, if depositors had the benefit of the information that he had and which it is his duty to convey to them, petitioners verily believe that the depositors would by a great majority favor said sale.

"Your petitioners state that they have requested the Bank Commissioner of the State of Arkansas to approve of said sale, and that said Commissioner has failed and refused to do so, although the said Commissioner knows that the acceptance of the offer at this time is for the best interests of these depositors and all other depositors of said bank.

"Your petitioners further state that to delay the sale of the said bank will be to deprive the depositors and these petitioners of their *pro rata* part for a great length of time, and that it will continue the heavy expense of liquidating to such a point and time that the depositors will not receive anything upon their deposits.

"Wherefore your petitioners pray that the court enter an order of sale authorizing and directing the sale of the said bank and its assets, and that the funds received from said sale be immediately disbursed *pro rata* among the depositors, according to their deposits."

The Bank Commissioner filed the following motion to dismiss the intervention: "That all of the assets of said American Exchange Trust Company are now in possession, ownership and control of this movant for liquidation and are being liquidated by him under the authority vested in him by the statutes of the State of Arkansas with respect to the liquidation of the assets of insolvent banks; and said assets are not in any sense *in custodia legis.*

"This court has no jurisdiction of, power or control over a sale of said assets at the instance of said interveners and can only act with respect to a sale of said assets at the instance of and upon the petition of this movant, who has heretofore rejected the purported offer set out in said intervention, and now rejects the same."

The court sustained the motion and dismissed the intervention "on the sole ground that the court has no jurisdiction." This appeal followed.

It is the contention of appellants, based on our statutes as construed by this court, that the chancery court has plenary power and supervision over the liquidation of insolvent banks; "that it has the power, either on application of interested parties, or on its own motion, to require an advantageous sale to be made, and is not limited in its power to merely approving or rejecting recommendations for sale made by the Bank Commissioner." On the other hand, it is contended by appellee that liquidation proceedings are administrative in character; that the Bank Commissioner, being the person designated by statute as the administrator of insolvent banks, is charged with the duty of determining, at least in the first instance, whether a sale of assets should be made; that the chancery court also acts administratively and not judicially in approving or rejecting applications of the Bank Commissioner to sell assets; and that the

court may not substitute its discretion for that of the commissioner by directing a sale which is not recommended by him.

This latter contention is based on the theory that our statutes on the subject, beginning with act 113 of 1913, § 53, and ending with act 61 of 1933, § 1, were borrowed from the National Banking Act (USCA, Title 12, § 192), and that the construction given the latter by the Federal courts was necessarily adopted. The applicable part of our statute, § 1, act 61, of the Acts of 1933, provides: "Upon taking charge of any bank, the Commissioner shall proceed to liquidate its affairs, to institute, maintain and defend suits and other proceedings in the courts of this State or elsewhere, to enforce in this State or elsewhere if necessary the liabilities of the stockholders, and, upon the order hereby empowered to be made of the chancery court of the county wherein the said bank had its place of business, or of the chancellor thereof in vacation, to sell, compound or exchange any or all bad or doubtful debts of the said estate, and, on like order, to sell or exchange any or all of the property, real, personal or mixed, of the said estate, in such manner and upon such terms and considerations as to any such sale, composition or exchange as specified in the said order. Any such sale shall be public or private as specified in the order therefor, and any such sale or exchange of real property shall be subject to confirmation respectively by the said court or chancellor."

The applicable portion of the National Banking Act above mentioned reads as follows: "Such receiver, under the direction of the Comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders."

Under this statute the Federal courts have held that the receiver of a national bank is not an officer or arm of the court, but is an officer of the Comptroller who appoints him, and that its assets are not *in custodia legis*. Also that the order mentioned under which the receiver may sell assets is merely a condition upon the receiver's power to sell. That "it is the exercise of the visitatorial power, given to the court by the statute and limited to that function. It is an administrative check upon the otherwise unconditional powers of the Comptroller," as said in *Hulse* v. *Argetsinger*, 18 Fed. (2d) 944. And as said in *Fifer* v. *Williams*, 5 Fed. (2d) 286: "There is no suit, no parties in the legal understanding of the term; no process must issue; no one is authorized to appear on behalf of the receiver or any one else, or to subpoena witnesses. It is an *ex parte* proceeding, and, though by the will of Congress put into judicial cognizance, it is not by its nature a judicial controversy."

While there is similarity of language used in both the State and National statutes, we cannot agree that the chancery courts of the State are so limited in the State Banking Act, as are the Federal courts under the National act, nor that they act in merely administrative capacities in the liquidation of insolvent banks. In other words, they are not mere rubber stamp courts, with authority merely to place the stamp of approval on the action or non-action of the commissioner. When we examine our State act, we find many provisions that lead to the contrary view. For instance, the Commissioner is impowered to appoint one or more special deputies to take charge of an insolvent bank, but he is required to file a copy of the certificate of appointment with the chancery clerk. Section 721, Crawford & Moses' Digest. The first thing required to be done on taking charge is to make an inventory of the bank's assets and file same with the chancery clerk, who shall thereupon give the administration of the affairs of said bank in said court a number on the court's docket; that the Commissioner shall make a complete list of all claims presented to him, whether allowed or rejected, and file same with said

clerk; and that each item of expense of liquidation shall be fixed by him, subject to court approval. Section 2, act 61, Acts 1933. Dividends can be paid to creditors, but only to such persons, in such amounts and upon such notice as the court may direct. Section 724, Crawford & Moses' Digest. The court has plenary power over the allowance and classification of claims, or the rejection of claims by the commissioner. And the allowance or disallowance by the court has always heretofore been considered to be a final order or judgment from which an appeal will lie to this court. Cases in this court involving claims in recent years are too numerous to mention. In *Taylor* v. *Moose,* 185 Ark. 856, 49 S. W. (2d) 1043, we held that a contract made by the Commissioner with an attorney fixing his compensation in advance for his services in the liquidation of a bank was void without the approval of the chancery court, a matter resting in its sound discretion, and a recovery for services based on such contract was denied. We there said: "The matter of fixing compensation for counsel finally rests in the sound discretion of the trial court, and we are of the opinion that the court did not abuse its discretion."

In *Citizens' Bank & Trust Co.* v. *Raines,* 125 Ark. 17, 187 S. W. 932, this court said: "It clearly appears that it was not to the best interest of those who were directly concerned in the manner of the disposition of the bank's assets to approve this sale. On the contrary, instead of husbanding the resources of the bank, so as to preserve and protect the interests of those who are directly concerned, the order of the court approving this sale would have precisely the opposite effect. The court therefore abused its discretion in confirming the report of the Commissioner with reference to the sale of the lands as a completed sale to the appellee." See also *Aber* v. *Maxwell,* 140 Ark. 208, 215 S. W. 389. In *Krumpen* v. *Taylor,* 183 Ark. 1046, 40 S. W. (2d) 775, we said: "The order of approval of the chancery court is a prerequisite before any sale of the assets of a bank in the hands of the State Bank Commissioner for liquidation can be made. The Commissioner may negotiate the terms of

sale, but it is the decree of the chancery court which gives effectiveness to the contract. In so far as the assets and property of the insolvent bank were concerned, the State Bank Commissioner must act under the order of the chancery court, and is, in this respect, the arm of the court as though acting as receiver under the appointment of the court.''

Again, in the same case, it was said: ''It was the duty of the chancellor to consider all the facts and circumstances attending the sale in order to determine whether it was a provident or improvident sale. Otherwise the whole matter might just as well have been placed exclusively in the hands of the State Bank Commissioner. If the approval of the chancery court was absolutely required for a valid sale of the assets and property of the insolvent bank, it necessarily follows that the chancery court is vested with some discretion in the matter. The Bank Commissioner may negotiate the terms of the sale, but it is the order of the chancery court which gives effectiveness to the contract.''

It seems to follow as a necessary consequence that if the chancery court has the power and the duty to refuse to approve an improvident sale, even though made by the Commissioner (*Krumpen* v. *Taylor, supra*) it would have the like power to order a provident one, without the approval of the Commissioner, on the petition of creditors, or on its own motion, after a hearing on due and proper notice. Here the allegation in the petition is that the Commissioner thinks the proposed sale an advantageous one, and that he would approve it, but for the objection of certain depositors. If in fact it would be for the best interest of the depositors to make the sale, and if the court is powerless to act except at the request of the Commissioner who refuses to make the request for a captious reason, the depositors would suffer a grievous wrong and be without any remedy. We cannot agree that such is the law, for, as said in *Krumpen* v. *Taylor, supra,* the ''Commissioner must act under the order of the chancery court, and is, in this respect, the arm of the court as though acting as receiver under the

appointment of the court." No substantial step may be taken by the Commissioner in the liquidation of insolvent banks, except on approval of the court. In all essentials he is the receiver of the court. The assets in his hands are *in custodia legis,* just as are the assets of an insolvent National bank in the custody of the Comptroller. *Yeargain* v. *Shull, Bank Comm.,* 149 Okla. 221, 300 Pac. 303; *Kidder* v. *Hall,* 113 Tex. 49, 251 S. W. 497.

We do not mean to hold that this sale should be made, or that the court should substitute its discretion for that of the Commissioner, but we do hold that the court has the power and jurisdiction to hear and determine the matter presented by the intervention of appellants.

The decree of dismissal will be reversed, and the cause remanded with directions to overrule the motion, and for further proceedings according to law and the principles of equity and not inconsistent with this opinion.

BUTLER, J., (dissenting). Article 12, § 6, of the Constitution provides: "Corporations may be formed under general laws, which laws may, from time to time, be altered or repealed. The General Assembly shall have the power to alter, revoke or annul any charter of incorporation now existing and revocable at the adoption of this Constitution, or any that may hereafter be created, whenever, in their opinion, it may be injurious to the citizens of this State, in such manner, however, that no injustice shall be done to the corporators."

Under the above provisions, ample authority is found for the action of the Legislature in passing the banking act (act No. 113 of the Acts of 1913) and subsequent statutes amendatory thereof. The argument is made that the statute, in attempting to authorize the Bank Commissioner to take charge of insolvent banks, is an invasion of the ancient jurisdiction of courts of chancery and therefore invalid. The answer to that is the section of the Constitution quoted above, and this court, in the case of *Greer* v. *Merchants' & Planters' Bank,* 114 Ark. 212, in answering a similar contention, said: "We

think that the original jurisdiction of the chancery court as preserved by our Constitution does not prevent the Legislature from entering upon the supervision of any matters which fall within the police power. This act does not attempt redistribution of judicial power, but it provides for a system of supervision which has nothing to do with the judicial function.

In the case of *State, etc.,* v. *Huxtable,* 178 Ark. 367, 12 S. W. (2d) 1, we said: "The police power of the State extends to the regulation of banking business and even to its prohibition except on such conditions as the State may prescribe." This doctrine was recognized in *Noble State Bank* v. *Haskell,* 219 U. S. 104, 31 S. Ct. 186. Continuing in the Huxtable case, we said: "The business of banking is of a public nature and therefore is subject to statutory regulation for the protection of the public. The power to regulate the business necessarily carries with it the power to provide adequate machinery for winding up its affairs when insolvent."

It is clear, from the authorities referred to, that the Legislature had the power to provide for the organization and functioning of banks and for the method of their liquidation when insolvent without any reference to courts of equity or any other court, and the Legislature might provide an agency for the supervision of banks and banking and the liquidation of insolvent banks to act wholly independent of the courts.

*Davis* v. *Moore,* 130 Ark. 129, 197 S. W. 295, was a case construing our banking act, and in that this court held that language of the particular section under consideration as well as many other provisions were copied from the National Banking Act, and under settled rules of construction we adopted the statute with the interpretation placed upon it by the Federal courts. The section involved in that case was the one authorizing the assessment of the statutory liability on the stockholders of an insolvent bank and to bring suit to enforce the same; the claim being made that the commissioner could only bring such suit when ordered by the chancery court. This claim was by the court denied, which

held that, under the construction placed upon similar provisions in National Banking Act, the enforcement of the stockholders double liability was not dependent on the orders of the court. Continuing in that case, we said: "The further question is raised whether or not the action of the Bank Commissioner in levying the assessments for the stockholders is conclusive as to the necessity for the call and the amount thereof. * * * That question is, we think, concluded under the doctrine of the effect of borrowing a statute, with its interpretation, from another jurisdiction. The provisions of our statute are almost identical with the National Banking Act with regard to the enforcement by the Bank Commissioner of the double liability of the stockholders. Neither of the statutes provides in detail how the liability shall be enforced but each of them do provide that it shall be enforced, under our statute by the Bank Commissioner, and under the National Banking Law by the receiver appointed by the Comptroller."

In *Easton* v. *Iowa,* 188 U. S. 238, 23 S. Ct. 288, the court said: "Our conclusions, upon principal and authority, are that Congress, having power to create a system of national banks, is the judge as to the extent of the powers that should be conferred upon said banks, and has the sole power to control and regulate the exercise of their operations; that Congress has directly dealt with the subject of the insolvency of such banks by giving control to the Secretary of the Treasury and the Comptroller of the Currency, who are authorized to suspend the operations of the banks and appoint receivers thereof when they become insolvent, or when they fail to make good any impairment of capital."

In *Hulse* v. *Argetsinger,* 18 Fed. (2d) 944, the court said: "The receiver of a national bank, appointed by the Comptroller, is his officer, not an officer of the court. Nor are its assets while in his hands *in custodia legis;* they do not become such by an order confirming a composition of debts made by him. Such an order is merely a condition upon the receiver's power to compound the debt; it is not made in any suit, nor does it adjudicate any rights *inter partes.* * * * It is the exercise of the

visitatorial power, given to the court by the statute and limited to that function. It is an administrative check upon the otherwise unconditional powers of the Comptroller.''

In the case of *Liberty National Bank* v. *McIntosh,* 16 Fed. (2d) 906, the court said: ''Ample authority will be found to make clear the purposes of the National Banking Act, and to fully and clearly show the power and authority of those charged with its administration. His jurisdiction with respect to all matters properly within his discretion is exclusive, and he is in respect thereto in no manner amenable to any court, nor is his action subject to review therein.''

The effect of these decisions is that the Comptroller of the Currency, acting through his receivers, has complete and exclusive direction of the liquidation of the assets of insolvent banks, subject only to the limitations placed upon his authority by the statute itself. He is not an officer of the court, nor are the assets of insolvent banks while in his hands *in custodia legis.* The entire proceedings are administrative in their nature and not judicial, including the duties imposed by the statute on the chancery court. Applying the same rule as the Federal courts, this court in *White* v. *Taylor, ante* p. 1, held in effect that the courts had no power to intervene where the Bank Commissioner had determined that it was necessary to levy an assessment on the stockholders of insolvent banks, and that the chancery court would have no jurisdiction.

In order to escape the effect of these decisions, it is necessary for the court in the case at bar to hold that the sections of our act involved and of the National Banking Act on the same subject are unlike, and therefore to that extent our statute is not a ''borrowed one.'' These sections are set out in the opinion of the court. I believe that to all eyes except those of a casuist they are alike in all substantial particulars. Both provide that the officer named in the statute shall take charge of the insolvent institution, and both provide for sale by him of the assets under the supervision of the courts. It seems to me that under any just and reasonable inter-

pretation that the powers of the Commissioner and of the Comptroller are for all practical purposes identical as to the disposition of the assets of insolvent banks, and that the rules declared by the Federal courts and stated above, under the decision in *Davis* v. *Moore, supra,* govern in this case, and justify the conclusion reached by the chancellor.

I therefore respectfully dissent.