In the Matter of the Estate of ABRAHAM COHEN, Deceased.

Surrogate's Court, Kings County, December 20, 1933.

*Kramer & Dumey* [*Arnold Dumey* of counsel], for the petitioner.

*Samuel Randel* [*Joseph M. Paley* of counsel], for the executrices.

WINGATE, S.   This proceeding was instituted by the petition of Victor Gordon for a compulsory accounting against the executrices of this estate.   It was founded on the allegation that he is a creditor. From this extremely innocuous and commonplace beginning, there have emerged a series of complex questions involving considerations of constitutional law, conflict of laws and the laws respecting banking and administration of the States of Illinois and New York.

The essence of the issue revolves about the alleged status of the petitioner.   Is he a " creditor " within the terminology of subdivision 3 of section 314 of the Surrogate's Court Act, in that he possesses " a claim or demand " " upon which a judgment for a

sum of money, or directing the payment of money, could be recovered in an action? "

The facts as set forth in the answer and developed on the hearing, demonstrate that the decedent was, prior to 1928, a resident of the State of Illinois, although domiciled in New York at the time of his death. While an Illinois citizen he became the owner of eighty-four shares, having a par value of $100 each, of the capital stock of the Central Manufacturing District Bank, a State bank organized under the laws of the State of Illinois. This bank was closed on or about June 24, 1932, and went into liquidation.

The Constitution of the State of Illinois (Art. XI, § 6), adopted in 1870, which, in this respect at least, is still in force, provides: " Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder."

By section 6 of a statute on " Banks," which became effective on December 1, 1920, an enactment was made by the Illinois Legislature on the subject of stockholders' liability. The first sentence of this section is a substantially identical repetition of the constitutional provision above quoted, the wording continuing: " It is hereby made the duty of the president and cashier, within thirty days after organization, to file in the office of the recorder of deeds of the county in which such bank is located, a certified list of all the original stockholders, giving the number of shares of stock held by each, and thereafter a certificate of all transfer of stock, not later than ten days after such transfer. No transfer of stock shall operate as a release of liability provided in this section." (Revised Stat. of Ill. chap. 16½, § 6.)

The Illinois statute on this subject was amended in 1929, approximately ten months prior to the death of the present testator, by the insertion in section 11 thereof of the following paragraph: " When any banking association, organized under this Act shall have gone into liquidation under the provisions of this section of the Act, the individual liability of shareholders provided for by section six (6) of this Act may be enforced by any creditor of such association by bill in equity in the nature of a creditor's bill brought by such creditor on behalf of himself and all creditors of the association against the shareholders thereof, in any court having jurisdiction in equity for the county in which such bank or banking association may have been located or established." (Revised Stat. of Ill. chap. 16½, § 11.)

Shortly after the closing of the bank the present claimants

brought an action as contemplated in the last-quoted enactment in the Circuit Court of Cook county, Ill., which was the county in which the bank had conducted its business, to enforce the stockholders' liabilities. By order made in that suit on September 20, 1932, one Howard K. Hurwith was appointed receiver by the court, all other actions were consolidated therein and all other receivers in respect to stockholders' liabilities were dismissed. All stockholders of the bank, including the decedent, were named as defendants in the consolidated action. This is still pending. Under date of October 11, 1932, a written communication was received by the executrices from Mr. Hurwith, the receiver, notifying them of his appointment in that capacity, and advising them that upon payment of $8,400, being $100 for each share held, an order would be entered releasing the estate from further liabilities. Apparently no attention was paid to this notice by its recipients.

On or about December 16, 1932, the present petitioner and seven others, who constituted the petitioners in the pending action in Illinois, filed with the executrices a joint notice of claim for $8,400, on the ground that, as creditors of the bank, they were creditors of the estate. This claim was rejected on January 11, 1933.

Ancillary administration was taken out upon the decedent's estate in Illinois shortly after his death. No claim in this regard was filed against the assets there located. That proceeding has now been closed.

It is the contention of the respondents that as a matter of law upon these admitted facts, no liability is enforcible against the estate in this jurisdiction. Among other arguments, it is maintained that the enactment of 1929 creates a special remedy which is exclusive; that another action, namely, that in Illinois, is pending, and consequently the present one is not maintainable, and that petitioners, having possessed the possibility of recovery in the ancillary administration in Illinois and having failed to pursue it, are barred from asserting the claim in this State.

The first step in evaluating the rights of petitioner and the other creditors of the defunct Illinois bank lies in an analysis of the effect of the pertinent Illinois constitutional and statutory provisions. This is, of course, not on the ground that these have any extraterritorial effect, which, certainly, is not the case (*Shipman* v. *Treadwell*, 200 N. Y. 472, 476; *Beach* v. *Bay State Steamboat Company*, 30 Barb. 433, 434; *Whitford* v. *Panama R. R. Co.*, 23 N. Y. 465, 470, 481; *Hope* v. *Brewer*, 136 id. 126, 137; *Loucks* v. *Standard Oil Co.*, 224 id. 99, 110; *Matter of Killough*, 148 Misc. 73, 81; Beale Confl. Laws, § 105, p. 118), but because the legal effect of any

act is determinable by the law of the locality in which it took place. (*Howarth* v. *Angle*, 162 N. Y. 179, 187; *Maxwell* v. *Thompson*, 195 App. Div. 616, 621; affd., 232 N. Y. 619; *Hutchinson* v. *Ward*, 192 id. 375, 380; *Slater* v. *Mex. Nat. R. R. Co.*, 194 U. S. 120, 126; *Pullman's Palace-Car Co.* v. *Pennsylvania*, 141 id. 18, 22; *Hervey* v. *R. I. Locomotive Works*, 93 id. 664, 671; *Sneed* v. *Ewing*, 5 J. J. Marsh. [Ky.] 460, 472; *Matter of Killough*, 148 Misc. 73, 81; Story Confl. Laws [6th ed.], § 18.) As was said by the Supreme Court of the United States in *Bernheimer* v. *Converse* (206 U. S. 516, at p. 529), respecting a similar controversy: " It may be regarded as settled that upon acquiring stock the stockholder incurred an obligation arising from the constitutional provision, contractual in its nature, and, as such, capable of being enforced in the courts not only of that State, but of another State and of the United States."

That the contractual nature of a stockholder's obligation is almost universally recognized is readily ascertainable from even a cursory examination of the relevant decisions in the several States. (See, for example, *Howarth* v. *Lombard*, 175 Mass. 570, 575; *Corrington* v. *Crosby*, 54 N. D. 614, 620; *Converse* v. *Hamilton*, 224 U. S. 243, 260; *Maxwell* v. *Thompson*, 195 App. Div. 616, 621; affd., 232 N. Y. 619; *Leighton* v. *Leighton Lea Association*, 146 App. Div. 255, 263; *Howarth* v. *Angle*, 162 N. Y. 179.)

In the last cited case the Court of Appeals, in referring to the double liability imposed by the State of Washington upon stockholders in corporations organized under its laws, said (at p. 187): " It is not enforced simply as a statutory obligation, but is regarded as voluntarily assumed, by the act of becoming a stockholder. * * * It is like other obligations, assumed in the form prescribed by the laws of the place where made, and, being valid there, is enforceable everywhere. * * * While the liability is, for convenience, frequently called statutory, because the statute, which is the constitution of the bank, affixed the obligation to the ownership of stock, it is in fact contractual and springs from an implied promise. There is no substantial difference between the liability for an unpaid balance on a stock subscription, which is an express contract to take stock and pay for it (*Stoddard* v. *Lum*, 159 N. Y. 265), and the liability for the unpaid deficiency of assets assumed by the act of becoming a member of the corporation through the purchase of stock, from which a contract is implied to perform the statutory conditions upon which stock may be owned. (*Richmond* v. *Irons*, 121 U. S. 27, 55.) "

This result is merely another application of the time-honored and universally applied principle that existing laws at the place

of contract become a part of its terms " as if they had been set forth in its stipulations in the very words of the law." (*McCracken* v. *Hayward*, 43 U. S. [2 How.] 608, 613.) (See, also, *Edwards* v. *Kearzey*, 96 U. S. 595, 601; *People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356, 361; *Illinois Bankers Life Ass'n* v. *Collins*, 341 Ill. 548, 552.)

One final preliminary consideration is worthy of note in the familiar principle that the authoritative exposition of the meaning of the Constitution of a State by its highest court is to be accepted as the true interpretation thereof. (*Fairfield* v. *County of Gallatin*, 100 U. S. 47, 51, 52; *Fowler* v. *Lamson*, 146 Ill. 472, 478; *Jessup* v. *Carnegie*, 80 N. Y. 441, 446; *Leonard* v. *Columbia Steam Navigation Co.*, 84 id. 48, 52; *Schwertfeger* v. *Scandinavian American Line*, 186 App. Div. 89, 91; affd., 226 N. Y. 696.)

Approaching, now, a consideration of the effect of the Illinois Constitution and statutes in respect to the liability of bank stockholders, an almost embarrassing wealth of pertinent adjudications is encountered. The outstanding authorities on the subject are *Golden* v. *Cervenka* (278 Ill. 409); *Sanders* v. *Merchants State Bank* (349 id. 547); *American Nat. Bank* v. *Holsen* (331 id. 622); *Illinois Bankers Life Ass'n* v. *Collins* (341 id. 548); *Eames* v. *Doris* (102 id. 350); *Wincock* v. *Turpin* (96 id. 135); *Buchanan* v. *Meisser* (105 id. 638); *Dupee* v. *Swigert* (127 id. 494); *Queenan* v. *Palmer* (117 id. 619); *Babka Plastering Co.* v. *City State Bank of Chicago* (264 Ill. App. 142), and *Rhode* v. *State Bank of Beverly Hills* (268 id. 578). From an analysis of these cases the nature and characteristics of a bank stockholder's liability under Illinois laws are clearly discernible.

" A person who becomes a stockholder assumes a primary liability to the creditors of the corporation to an amount equal to his stock. He offers to become liable individually to the amount provided by the constitution, and is bound by contract to all persons contracting with the corporation." (*Golden* v. *Cervenka*, 278 Ill. 409, 441.)

" The meaning of the constitutional provision was that the persons who were stockholders of the bank at the time credit was extended to it or a liability was incurred by it should be individually and personally liable, as partners, to the creditor to an amount equal to their stock." (*Golden* v. *Cervenka*, 278 Ill. 409, 419; to like effect, *Buchanan* v. *Meisser*, 105 id. 638, 643.)

" The constitutional provision * * * in regard to the liabilities of stockholders in banking institutions is a self-executing provision and needs no legislation to enforce it. Being a part of the organic law it requires no popular election to make its effect

more binding. No banking act can go into operation in this State of which the constitutional provision in question shall not be a part. By virtue of the inherent power of the constitution itself such provision is grafted into every banking law which is passed by the legislature or submitted to the votes of the people." (*Sanders* v. *Merchants State Bank*, 349 Ill. 547, 557.) (See, also, *Golden* v. *Cervenka*, 278 Ill. 409, 416; *American Nat. Bank* v. *Holsen*, 331 id. 622, 627; *Dupee* v. *Swigert*, 127 id. 494, 505; *Rhode* v. *State Bank of Beverly Hills*, 268 Ill. App. 578, 583.)

Since the Constitution provides that "every stockholder in a banking corporation * * * shall be individually responsible and liable to its creditors * * * to an amount equal to his * * * shares so held," any statute "which attempted to make each stockholder liable only for his ratable share of the indebtedness of the bank was void and the constitutional provision should be regarded as a part of the Banking act." (*Golden* v. *Cervenka*, 278 Ill. 409, 416.) (See, also, *Dupee* v. *Swigert*, 127 Ill. 494, 504.)

"It was not necessary to prove that the bank was insolvent as the liability of the stockholder to the creditor is primary, and is regarded as that of partners, occupying the same relation to the creditor as the bank itself, owing the same debt to the depositor as the bank owes and he can be sued for the debt just as the bank may be sued, and as soon as the bank may be sued (*Schalucky* v. *Field*, 124 Ill. 617, 622)." (*Babka Plastering Co.* v. *City State Bank of Chicago*, 264 Ill. App. 142, 160; *Rhode* v. *State Bank of Beverly Hills*, 268 id. 578, 584.)

"Under the constitution and the statute the stockholder is responsible to the amount of his stock for all the liabilities of the bank which are incurred during his ownership of stock." (*Golden* v. *Cervenka*, 278 Ill. 409, 420.) (See, also, *Sanders* v. *Merchants State Bank*, 349 Ill. 547, 555; *Dupee* v. *Swigert*, 127 id. 494, 505.)

"Section 6 of the Banking act * * * provides for a public record of all the stockholders * * *. The object of this record is to give information as to the names of the stockholders, and persons dealing with the bank have a right to rely upon the list of stockholders shown by the record. The stock can be transferred only on the books of the association. * * * The stockholder registered as such on the books of the bank can be relieved from liability only by a transfer of his stock on the books." (*Golden* v. *Cervenka*, 278 Ill. 409, 438.)

"The constitutional provision is, that every stockholder shall be responsible to an amount equal to his shares, for all the liabilities accruing while he remains a stockholder. The holder of the first certificate of stock issued is responsible for all the debts of the

bank to the extent of the stock represented by that certificate until he transfers it. He remains liable after the transfer to the same extent as before, but not for any debt subsequently accruing. His liability does not attach to the stock transferred but remains his personal obligation, and his vendee becomes liable only for such debts as accrue during his ownership of the stock. So it is with each successive holder. Each is liable, by the express language of the constitution, to an amount equal to his shares for all the liabilities of the bank accruing during his ownership and no more. If the owner of one share of stock has been such owner since the organization of the bank until its failure twenty years later, his liability for its debts is limited to $100. If he is the owner of another share which was transferred to him within a week of the bank's failure, his liability on account of this share is also limited to $100. This share may, however, have been transferred a dozen times, and while the liability of each one of the other eleven owners of the share is limited to $100, the several liabilities on the one share may aggregate $1,200. The constitution suggests no method of terminating the successive personal liability of each holder to the amount of his stock except the payment of the debts for which he is bound, unless there is some statute of limitations applicable to the case." (*Sanders* v. *Merchants State Bank*, 349 Ill. 547, 556.) Satisfaction of a creditor's judgment against a stockholder to the extent of the par value of each share held, will extinguish the liability of the latter. (*Buchanan* v. *Meisser*, 105 Ill. 638, 643.)

" After a shareholder has been sued, and paid the recovery he is no doubt entitled to contribution from all of the other shareholders." (*Wincock* v. *Turpin*, 96 Ill. 135, 144.) (See, also, *Buchanan* v. *Meisser*, 105 Ill. 638, 644; *Dupee* v. *Swigert*, 127 id. 494, 505.)

The next consideration in the ascertainment of the pertinent law of Illinois concerns the methods of enforcement of this well-defined liability of stockholders.

" It is clear that the language of the constitution was intended to impose upon shareholders in banks, in addition to their investment in the stock, which is, of course, liable to creditors of the bank, a further personal responsibility to the creditors to a like amount." (*Golden* v. *Cervenka*, 278 Ill. 409, 417.) (See, also, *Babka Plastering Co.* v. *City State Bank of Chicago*, 264 Ill. App. 142, 151.)

" It is not liability to the corporation or to the creditors of the corporation as a class, but to each individual creditor on the part of each individual stockholder. Therefore, it is the creditors, alone, individually or collectively, who can enforce the liability

by such remedies as the law affords." (*Golden* v. *Cervenka*, 278 Ill. 409, 435.) (See, also, *American Nat. Bank* v. *Holsen*, 331 Ill. 622, 627.)

" The creditors have a right to pursue and control their own remedies in regard to their own individual property * * *. It is an unauthorized interference with the rights of the creditors to authorize the collection of the indebtedness due to them individually by a stranger." (*Golden* v. *Cervenka*, 278 Ill. 409, 437.)

" This court has frequently held that an action at law by a single creditor will lie against any stockholder of an insolvent corporation, to enforce an individual liability created by its charter." (*Eames* v. *Doris*, 102 Ill. 350, 356.) (See, also, *Dupee* v. *Swigert*, 127 Ill. 494, 505.)

" The liability constitutes a fund for the benefit of all of these two classes of creditors, and they are entitled to share in it in proportion to the amount of their debts. * * * Hence the propriety * * * of a proceeding in equity by one or more in behalf of all the creditors, in order that the equitable principle that equality is equity, may be applied. * * * the creditors, in the case of such a personal statute liability of stockholders, have a concurrent remedy by a suit at law, or by a bill in equity for the enforcement of the liability." (*Eames* v. *Doris*, 102 Ill. 350, 357.) (See, also, *Queenan* v. *Palmer*, 117 Ill. 619, 627; *Babka Plastering Co.* v. *City State Bank of Chicago*, 264 Ill. App. 142, 151; *Golden* v. *Cervenka*, 278 Ill. 409, 435.)

The law is conveniently summarized and the prevalent Illinois practice indicated by the following excerpt from the *Babka Plastering Company* case (at p. 147): " The theory of the appellees is that the instant case is a representative suit for the benefit of all the creditors of the bank, brought by them as creditors, on behalf of all the creditors, and that they can require all the stockholders of the bank to pay to the receiver appointed by the court the maximum amount which the stockholders could be held for under section 6 of art. 11 of the Constitution * * *; that the liability of stockholders is contractual, primary, direct and immediate, and is to the creditors who may sue, either individually at law or collectively in a representative suit; that the creditors may proceed against all or against only a part of the stockholders, by a single suit in equity, by any number of creditors, * * * for the purpose of enforcing the liabilities of all stockholders; require all creditors to come in and prove their claims and obtain an equitable distribution of all the funds collected among all the creditors of the bank, and that the existence of a liability on the part of the stockholders does not depend upon the ascertainment of the exist-

ence or extent of a deficiency of the bank's assets to pay creditors. On the other hand, it is the contention of the appellants, as we understand it, that the constitution does not permit creditors whose combined claims fall short of the maximum stock liability to enforce that liability in equity, and that they (the stockholders) cannot be compelled to pay their liability under the constitution to any one other than the creditors themselves. We are of the opinion that appellants' contention cannot be maintained; to do so would be to render it impossible to enforce the recoveries in an equity case and the depositors would be driven to innumerable suits at law, resulting in a multiplicity of suits and inequality in the separate recoveries."

The foregoing review makes it apparent that were the present testator alive and served with process in the State of Illinois in a suit by the present applicant, the latter would be held a creditor.

The next question for determination concerns the effect of the death upon such status of creditorship.

Since the uniform determination not only of the courts of Illinois respecting this particular liability, but also of substantially all other jurisdictions in respect to similar obligations, is that it is contractual in nature, it follows that the cause of action survives. (*German-American Coffee Co.* v. *Johnston*, 168 App. Div. 31, 33.) The question is, therefore, presented as to the effect, if any, of the failure of these creditors to prove their claim against that portion of the estate of the decedent which was in the hands of the ancillary administrator in Illinois.

The sixth clause of section 70 of the Administration Act of Illinois provides that all demands not exhibited to the court within one year from the granting of administration shall be forever barred unless the creditors shall find other estate of the deceased not inventoried or accounted for by the executor or administrator. It has been frequently held that this is not a statute of limitation but that its purpose is merely to facilitate the early settlement of estates. (*Sanders* v. *Merchants State Bank*, 349 Ill. 547, 566; *Durflinger* v. *Arnold*, 329 id. 93, 98.) The result of the failure to present the claim to the Illinois representative within the specified time does not alter the status of the creditor as such but simply prevents him from receiving any distribution in respect to his claim from the assets which have been inventoried and accounted for in the Illinois proceeding. (*Sanders* v. *Merchants State Bank*, *supra; Waughop* v. *Bartlett*, 165 Ill. 124, 129; *People* v. *Small*, 319 id. 437, 447.) His debt is still enforcible against assets of the decedent not so inventoried or accounted for (*Sanders* v. *Merchants State Bank*, *supra; People* v. *Small*, *supra*), and apparently also

against devisees of decedent's real property. (*People* v. *Small, supra.*) Since there is no allegation or presumption that the Illinois representative included in his inventory or account any of the New York assets against which recovery is now sought, it is obvious that the Illinois Administration statute interposes no obstacle to a recovery against them. Even, however, if a satisfaction of his claim were barred, it would not alter his status as a creditor (*People* v. *Small, supra*), which, alone, is presently in issue.

The further contention of the executrices that these foreign creditors should be precluded from prosecuting their claim against the domiciliary estate of the decedent by reason of their failure to pursue such remedies as may have been available against the ancillary administrator in Illinois, possesses the merit of novelty, if nothing more. No enactment or determination sustaining such an unusual contention has, or presumably could be, cited. It is entirely true that this and most other jurisdictions grant a discretionary power to their appropriate tribunals to refuse the exercise of their jurisdiction to compel transmission of assets within the borders of the State to the place of principal domiciliary administration until local creditors have been paid. It has never been intimated, however, that this conditional privilege of local payment involved any obligation upon the creditor to seek it, or, in the event of its waiver, that any deprivation of the basic common-law right to demand payment from the debtor was involved. That there is no inherent right in a local creditor to demand payment from the assets upon which ancillary administration has been had, is demonstrated by the permissive language of section 165 of the Surrogate's Court Act, and the decisions, like *Matter of Meyer* (244 N. Y. 598, 599), which have determined that the exercise by a surrogate of his discretionary power to remit all assets to the place of domiciliary administration without the payment of local creditors, was not subject to review. In the usual case, the statement of *Brown* v. *Brown* (1 Barb. Ch. 189, 218), although made in a somewhat different connection, is as true today as it was when written. The court says: " As a question of expediency, certainly, those who have claims upon the estate, ought to be compelled to resort to the courts of the country where the decedent was domiciled, and where the personal representatives of his estate were appointed."

The absurdity of any requirement that a creditor resident in a State in which ancillary administration had been taken out should first pursue local assets is made manifest by the fact that if, after such prosecution of his rights, the local assets proved insufficient for his satisfaction, his labor in proving his claim against the ancillary

administrator would go for naught, since the judgment would not be binding upon the principal executor or administrator, and he would be obliged to repeat the process in the jurisdiction of appointment of the latter. (*Brown* v. *Fletcher's Estate*, 210 U. S. 82, 90, 94; *Low* v. *Bartlett*, 8 Allen [Mass.], 259, 263, 266; *Matter of Eaton*, 108 Misc. 590, 597; affd., 204 App. Div. 609, 612.) The contention of the respondents that it was the obligation of an Illinois creditor to pursue the Illinois assets in the hands of the ancillary representative under penalty of a barring of his claim is, therefore, wholly overruled. (*Matter of Hadden*, 193 App. Div. 908.)

Before entering upon the final and most earnestly urged question of conflict of laws involved in the case, there remains for notice the defense that another action is pending in respect to the same subject-matter. The proceeding relied upon for this purpose is the general creditors' action in Illinois in which the decedent was named a party defendant, but in which no process has ever been served upon him or any one representing the estate. Even if the pendency of an action in another State respecting the same subject-matter could in any case serve as a defense in the absence of a statute to that effect, which seems doubtful (*Douglass* v. *Phenix Ins. Co.*, 138 N. Y. 209, 218), it is primary that an action is not commenced in respect to any defendant until the summons or other initial process has been duly served upon him. (*Hart* v. *Hart*, 86 App. Div. 236, 238; *Burton Co.* v. *Cowan*, 80 Hun, 392, 393; *Warner* v. *Warner*, 6 Misc. 249, and authorities cited.) The action in Illinois will unquestionably result in a judgment *in rem*, binding upon the respondents in respect to the assets of the bank (*Shipman* v. *Treadwell*, 208 N. Y. 404, 410; *Howarth* v. *Angle*, 162 id. 179, 186; *Bernheimer* v. *Converse*, 206 U. S. 516, 532; *Converse* v. *Hamilton*, 224 id. 243, 256; *Howarth* v. *Lombard*, 175 Mass. 570, 577; *Corrington* v. *Crosby*, 54 N. D. 614, 623), but what is here sought is the enforcement of an obligation *in personam*, which is impossible in the absence of personal service upon the persons sought to be charged.

The final main question for decision is as to whether New York courts will enforce this unquestionable right of the present applicants and thus bring them within the statutory definition of a creditor, as a person possessing a demand " upon which a judgment for a sum of money  *  *  *  could be recovered in an action." As this question concerns the remedy allowable, it is governed by the law of the forum, which is the State of New York. (*Ruggles* v. *Keeler*, 3 Johns. 263, 268; *Merchants' Loan & Trust Co.* v. *Clair*, 36 Hun, 362, 364; affd., 107 N. Y. 663; *Petersen* v. *Chemical Bank*, 32 id. 21, 42; *Miller* v. *Brenham*, 68 id. 83, 87; *Wooden* v. *Western N. Y. &*

*Pa. Ry. Co.*, 126 id. 10, 16, 17; *Howarth* v. *Angle*, 162 id. 179, 187; *Jacobus* v. *Colgate*, 217 id. 235, 240, 241; *Baltimore & Ohio Ry. Co.* v. *Joy*, 173 U. S. 226; *Luster* v. *Martin*, 58 F. [2d] 537, 539.)

As a *prima facie* matter, since the right of action of the creditors of the Illinois bank is transitory in nature, it would seem that enforcement thereof in this State should be permitted. Since, however, several cases have arisen in the courts of New York in which recovery of stockholders' liabilities have been denied, it becomes necessary to analyze the reasons assigned for such refusals and to see whether they are applicable to the situation at bar.

It is a truism of testamentary interpretation that decisions construing particular wills are valueless in the construction of other testamentary documents except in so far as they purport to enunciate general rules. (*Matter of Watson*, 262 N. Y. 284, 297; *Matter of McCafferty*, 142 Misc. 371, 372, 373; affd., 236 App. Div. 678; *Matter of Burling*, 148 Misc. 835, 837.) The same is true in an only slightly lesser degree in statutory interpretation since " slight differences in the terms of statutes may at times lead to varying interpretations of legislative intent, and decisions as to the effect of other statutes may furnish but uncertain guidance in the construction of the statute now under consideration." (*Horowitz* v. *Winter*, 129 Misc. 814, 816.)

Since neither the diligence of counsel in their elaborate and helpful briefs, nor the independent research of the court have disclosed any case in this State in which these Illinois enactments have been considered, it is deemed the part of wisdom to attempt an analysis of the reasons advanced by the courts for refusing a remedy, rather than to hazard a guess as to how the higher courts would decide the present question with no surer guide than their observations respecting totally dissimilar enactments. Such analysis demonstrates that the reasons advanced for a refusal to grant relief in the courts of New York were eight in number, namely:

1. That the foreign statute furnished a special remedy which was not appropriate here. (See *Shipman* v. *Treadwell*, 200 N. Y. 472, 476.)

2. That it was impossible for New York courts to determine the exact liability of defendant. (See *Marshall* v. *Sherman*, 148 N. Y. 9, 22.)

3. That the foreign statute had not vested in plaintiff the right to sue. (*See Titus* v. *Booker*, 216 App. Div. 608, 612; *Barnes* v. *Wheaton*, 80 Hun, 8, 16.)

4. That local courts could not effectuate the object of the foreign statute. (See *Marshall* v. *Sherman*, 148 N. Y. 9, 22.)

5. That affording a remedy would impair the rights of citizens

of New York. (See *Stoddard* v. *Lum,* 159 N. Y. 265, 277; *Howarth* v. *Angle,* 162 id. 179, 186.)

6. That the foreign law was penal. (See *Stratton* v. *Bertles,* 238 App. Div. 87, 90.)

7. That permitting a recovery would not protect the defendant from further recoveries of like nature by others. (See *Wright* v. *Weil,* 139 Misc. 114, 115.)

8. That allowance of a recovery would infringe the public policy of New York. (See *Howarth* v. *Angle,* 162 N. Y. 179, 186.)

The first of these grounds for refusal is the one most strenuously asserted by the respondents. It will be noted that whereas the " self-executing " constitutional liability was included in the wording of the new statute which became effective late in 1929, a provision in section 11 that this " individual liability of the shareholders * * * may be enforced by any creditor * * * by bill in equity, in the nature of a creditor's bill brought on behalf of himself and all creditors of the association against the shareholders thereof, in any court having jurisdiction in equity for the county in which such bank * * * may have been located " was added. (Revised Stat. of Ill. chap. 16½, § 11.)

Respondents in subdivision (e) of paragraph 2 of their answer expressly concede " that prior to the taking effect of this enactment any creditor of an insolvent Illinois bank under the state of facts outlined * * * above could have maintained an action in our State in a court having jurisdiction to recover the statutory liability after the amount thereof had been first determined. We concede this upon the theory that the right of claim being created by a sister state without a specific remedy for its enforcement, an action could be maintained in New York, as upon contract, and that such an action was not against our public policy."

In view of this concession, it is primarily incumbent upon respondents, if their contention is to be sustained, to demonstrate, *first,* that the quoted 1929 addition to the statute is a " special remedy " within the judicial definition of that term; *second,* that its natural and inevitable connotation made such remedy exclusive; and, *third,* that the enactment itself was constitutional in the State of Illinois. So far as has come to the knowledge of the court or has been shown in evidence, the last question has not been passed upon, the court in *Rhode* v. *State Bank of Beverly Hills* (268 Ill. App. 578, 583) having carefully avoided any adjudication on the subject.

The question as to whether this remedy of a general suit " in a court having general jurisdiction in equity for the county in which such bank * * * may have been located " is a special remedy within the terminology of the cases, seems to have

been decided adversely to respondents in *Shipman* v. *Treadwell* (200 N. Y. 472). The statute there under review, like the one at bar, provided for the bringing of a local enforcement action in the State of incorporation. The court in determining that this was not such a special remedy as to prevent enforcement of the stockholders' liability by the courts of this State, said (at p. 476): " It is doubtless the rule that where a foreign statute which creates the liability of a stockholder also provides a remedy for the enforcement of that liability, such remedy is exclusive and our courts will not intervene to enforce it. (*Lowry* v. *Inman*, 46 N. Y. 119; *Christensen* v. *Eno*, 106 N. Y. 97; *Howarth* v. *Angle, supra*.) But it is also obvious that the remedy referred to in these cases is the remedy against the stockholder who is a resident of this State and a nonresident of the State which is the domicile of the corporation, for if it were not so no proceeding could be instituted against stockholders residing in the domicile of a corporation without cutting off any right of action against stockholders who reside outside of that domicile. The complaint herein does recite certain proceedings in the Ohio courts to which all the stockholders, including the defendants, were parties, but it is also set forth that the defendants were served by publication and did not appear in the foreign tribunal, so that as to them the proceedings there were *in rem* and not *in personam*. * * * The remedy thus provided is in fact no remedy if it cannot be prosecuted in the state where the stockholder resides. For all practical purposes this case is no different from one in which it appears that the foreign statute has provided no remedy and the foreign court has made no direction, and such a case falls directly within the rule of *Howarth* v. *Angle*."

Turning, now, to the second demonstration requisite from respondents in this regard, it is obvious from the language employed in the enactment that the use of the particular remedy is merely *authorized and optional* for the enforcement of the constitutional liability. It is by no means prescribed. The statute says that such liability " *may* be enforced " by the indicated remedy, not that it must, or shall be. In view of the constitutional authority demonstrated by such cases as *Eames* v. *Doris* (102 Ill. 350); *Dupee* v. *Swigert* (127 id. 494), and *Babka Plastering Co.* v. *City State Bank of Chicago* (264 Ill. App. 142, 147), hereinbefore reviewed, to any creditor to bring a suit at law against a stockholder unless restrained in the interest of avoiding multiplicity of suits or insuring equality of distribution, it is obvious that the only intended effect of the enactment was to crystalize into statute law that which had already become accepted practice. It was declaratory and not mandatory and left the creditors in precisely the position in which they stood before its enactment, at which time respondents concede that an

action to enforce the liability would have been maintainable in this State.

Even though it were to be conceded, however, that the procedure indicated in the section was mandatory and exclusive, this fact could not aid respondents, since in such case the enactment would clearly be unconstitutional and violative of the contract and due process clauses of the Federal Constitution.

The respondents have cited a considerable number of cases to the effect that it is within the power of the sovereign, without constitutional infringement, to alter a remedy. (*Newland* v. *Marsh*, 19 Ill. 376, 383–385; *Templeton* v. *Horne*, 82 id. 491, 493; *Fleischman* v. *Walker*, 91 id. 318; *Wood* v. *Child*, 20 id. 209, 212; *Persons* v. *Gardner*, 42 App. Div. 490, 497; *Van Tuyl* v. *Schwab*, 172 id. 670, 674.) Such is undoubtedly the law, subject, however, to certain definite and distinct limitations which are clearly reflected by the court in *Richardson* v. *United States Mortgage & Trust Co.* (194 Ill. 259). The opinion of the court in that case reads in part (at p. 266): " It is true, that ' whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair. the obligation of the contract; but if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself; in either case it is prohibited by the constitution.' (*Fisher* v. *Green*, 142 Ill. 80.) In other words, remedies, existing at the time the contract is made, cannot be impaired, so as to materially lessen the value of the contract, by subsequent law. (Ibid.) The legislature may enlarge, limit or alter modes of proceeding, which are instituted to enforce a contract, but it cannot deny a remedy altogether, or so embarrass a remedy with conditions or restrictions, as seriously to impair the value of the right conferred by the contract. (*Tennessee* v. *Sneed*, 96 U. S. 69.) In *Edwards* v. *Kearzey*, 96 U. S. 595, the Supreme Court of the United States held as follows: ' The remedy subsisting in a State when and where a contract is made, and is to be performed, is a part of its obligation; and any subsequent law of the State, which so affects that remedy as substantially to impair and lessen the value of the contract, is forbidden by the constitution of the United States, and therefore void.' Again, in *Louisiana* v. *New Orleans*, 102 U. S. 203, the same court held, that ' the obligation of contracts is impaired by such legislation as lessens the efficiency of the remedy, which the law, in force at the time they were made, provided for enforcing them.' In *Walker* v. *Whitehead*, 16 Wall. 314, it was said by the same court: ' The remedy or means of enforcing a contract is a part of that " obligation " of a contract, which the constitution protects against being impaired by any law passed by a State.' "

Respondents concede that prior to the effective date of the statute, Illinois creditors could have prosecuted their rights in New York courts. They contend that by reason of the 1929 statute they can no longer do so. If the latter contention is correct, it is entirely obvious that the enactment purported to deprive them of a contract property right already vested in them, which would be an obvious violation of section 10 of article 1 of the United States Constitution and of section 1 of the Fourteenth Amendment thereof. What respondents urge is that the Illinois Legislature has reversed the process noted in *Bernheimer* v. *Converse* (206 U. S. 516, 531, 532). If this be the correct interpretation of its act, the effort was wholly futile and void and the conceded pre-existing rights of the petitioners remain unimpaired. The correct interpretation of the statute is, however, unquestionably that set forth in either the first or second noted alternatives, since either would sustain the constitutionality of the enactment. Nevertheless, whichever of the three be adopted, the statute interposes no bar to the rights of the petitioner.

The second noted ground sometimes advanced by New York courts for refusing a remedy, namely, that the exact liability of defendant cannot here be determined, is not available against the sort of right granted creditors by the Illinois Constitution. If, as has sometimes appeared, respondents' liability were only for a *pro rata* of the deficiency of assets of the bank with a limitation of $100 per share, the objection might be presently available, since the question of the precise amount by which the liabilities of the bank exceed its assets has not yet been determined in the Illinois proceeding. It would seem, however, that this would at best be no more than a dilatory defense as the decision of this question in the pending Illinois creditors' action would probably be a binding adjudication on this subject. (*Shipman* v. *Treadwell*, 200 N. Y. 472, 476; 208 id. 404, 410; *Howarth* v. *Angle*, 162 id. 179, 186; *Bernheimer* v. *Converse*, 206 U. S. 516, 532; *Converse* v. *Hamilton*, 224 id. 243, 256; *Corrington* v. *Crosby*, 54 N. D. 614, 623.) The liability under the laws of Illinois is, however, a fixed and definite one, as demonstrated by the quotations from Illinois authorities hereinbefore given, to the extent of the par value of the stock owned by the decedent. This par value was $8,400. Wherefore, if the bank owed obligations to this amount, this sum was and is payable, irrespective of the result in the Illinois action.

The third occasionally asserted ground of refusal, that the particular plaintiff was not vested with the right to sue, is equally untenable, whether the petitioner be considered as acting purely on his own behalf, or as representing not only himself but all other creditors of the bank, which seems conceded to be his true character.

(See answer, ¶ 3 [c].) Under the Illinois authorities heretofore reviewed, each creditor possesses a direct right of action at law against each stockholder. If the proceeding be considered a representative one, then petitioner and his associates are the precise and sole individuals designated and authorized by Illinois laws for the active work in collecting the fund which is to be disbursed by the Illinois creditors' receiver for the *pro rata* benefit of all creditors.

It is obvious, adverting to the fourth possible objection, that our courts are fully competent to effectuate the object of the Illinois statute, the purpose of which is merely to reimburse those who have lost by reason of their dealings with the business enterprise in respect to which the decedent occupied the position of a partner under Illinois laws.

The allowance of relief would not impair the rights of New York citizens. All that is sought is the enforcement of a contractual, transitory right which the decedent voluntarily assumed. No New York decision has been cited which maintains the position that it is one of the inalienable privileges of our citizens to engage in business either at home or abroad, to incur obligations in the process, to repudiate these obligations and then receive sanctuary under the ægis of the Empire State from those demanding fulfillment of the engagements thus voluntarily assumed.

Any thought that the pertinent Illinois laws are in the least penal in character need not detain us, since any such suggestion is completely refuted by the lucid exposition of this phase of the subject in *Queenan* v. *Palmer* (117 Ill. 619, 627) where any who possess curiosity on this phase of the question may fully sate their longings.

A present recovery by these petitioners will fully protect the respondents from any obligation for further payment. (See *Buchanan* v. *Meisser, supra.*)

The final consideration in this regard concerns the possibility of infringement of the public policy of this State by permitting a recovery.

The respondents lay some stress on various dicta by distinguished tribunals to the effect that personal liability of stockholders for corporate debts did not exist at common law. (*Pollard* v. *Bailey*, 87 U. S. 520, 526; *Bottlers Seal Co.* v. *Rainey*, 243 N. Y. 333, 346; *Coulter Dry Goods Co.* v. *Rosenbaum*, 74 Misc. 579, 580.) In the opinion of the court this position, whereas literally correct, is considerably less than a half truth. The real fact is that corporations in the modern accepted sense of the term, as referring to private corporations for personal profit, were substantially, if not wholly, unknown at common law, and are a product of the much discussed and frequently somewhat maligned machine age of the nineteenth

and twentieth centuries. As defined by Chief Justice MARSHALL (*Dartmouth College* v. *Woodward*, 4 Wheat. 518, 636), "a corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it." Prior to the middle of the first half of the nineteenth century, when the period of development of the common law, strictly speaking, had passed, corporations were created almost wholly by special act for particular purposes and with such individual powers, liabilities and exemptions as suited the ideas of propriety of the various legislative bodies according them legal existence. Even a cursory examination of their characteristics indicates that they had few common qualities and that their purposes in the vast majority of cases seldom included that of personal gain to their members. In these early days, commercial transactions were almost wholly conducted by individuals, either alone or in association with others acting in a similar manner. During these times full personal liability by those engaged in the business for the obligations incurred therein was a matter of course, and it is only during the last century that the conception of any different relationship began to gain prevalence. Even when private statutes of incorporation began to give way to general acts, some form of personal liability for its debts or parts thereof by those interested in the business was imposed, and similar obligations have been continued to the present time. It is, therefore, most misleading to affirm that stockholders' liability for corporate debts was unknown at common law since such a statement carries with it the implication that statutes imposing such liability are in derogation of the common law and are, therefore, subject to strict construction. (*Matter of Smith*, 136 Misc. 863, 880; *Matter of Marsh*, 143 id. 609, 614; *Matter of Canter*, 146 id. 123, 126, 127; *Matter of Killough*, 148 id. 73, 88.) Rather should it be asserted that exoneration from the debts incurred in commercial business is in derogation of usual common-law rules, with the result, on the application of the same principle, that the statutes relieving the individual should be strictly construed in favor of the alleged creditor.

Thus viewed, the obligation possessed by the petitioners in this proceeding is merely the age-old duty of a man in business, to solve the debts incurred in that business; and the language of *Hutchinson* v. *Ward* (192 N. Y. 375), quoted at length in respondents' brief, assumes a peculiar relevancy. The court says (at p. 381): "We have no policy in this State which is affected by permitting the suit. It is not a case where the plaintiff is seeking to enforce some peculiar liability, or remedy, created by a foreign state; he is seeking to enforce a common law obligation which has not wholly

lost its force. The action is transitory in its nature and is maintainable outside of the State where the contract was made. The courts of this State are open to all suitors and will enforce transitory rights of action, where the liability asserted is recognized by the common law, is contractual in its nature and is not violative of our public policy. This obligation of comity is only denied * * * where a foreign statute is sought to be enforced against a citizen, which has created a liability, or has granted a remedy, unknown to the common law, or contrary to our declared policy."

The right of a creditor to sue a partner for a partnership liability is a common-law right. The liability of this decedent to the petitioner, as declared by the law of its creation, which alone governs this phase of the question, is that of a partner to a creditor. (*Golden* v. *Cervenka, supra; Buchanan* v. *Meisser, supra.*)

" If aid is to be withheld here, it must be because the cause of action in its nature offends our sense of justice or menances the public welfare. * * * Our own scheme of legislation may be different. We may even have no legislation on the subject. That is not enough to show that public policy forbids us to enforce the foreign right. A right of action is property. If a foreign statute gives the right, the mere fact that we do not give a like right is no reason for refusing to help the plaintiff in getting what belongs to him. We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home. *Similarity of legislation has indeed this importance; its presence shows beyond question that the foreign statute does not offend the local policy.* But its absence does not prove the contrary. * * * The misleading word ' comity ' has been responsible for much of the trouble. It has been fertile in suggesting a discretion unregulated by general principles * * *. The sovereign in its discretion may refuse its aid to the foreign right. * * * From this it has been an easy step to the conclusion that a like freedom of choice has been confided to the courts. But that, of course, is a false view. * * * The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." (*Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 110.) (Italics not in original.)

The remedies available to petitioner according to the laws of Illinois are such as New York has afforded its own suitors in closely analogous situations, from the earliest days of the Republic even to the present. Our reported cases furnish almost innumerable examples of the enforcement at law of the individual liability of a

stockholder in domestic corporations in a suit by a single creditor of the corporation. Any comprehensive enumeration of such statutes, enacted from time to time by our Legislature, would be profitless in this connection. It will suffice for present purposes to note a few of the many examples of this variety of recovery permitted in our courts in respect to the personal liability of stockholders in domestic corporations.

An early case of this type (*Bank of Poughkeepsie* v. *Ibbotson*, 24 Wend. 473) involved an application of the "Act Relative to Incorporations for Manufacturing Purposes" passed in 1811. The court therein says (at p. 479): " The seventh section provides, that for all debts due and owing by the company at the time of its dissolution, the persons then composing it shall be individually responsible to the extent of their respective shares of stock. 3 R. S. 222. * * *

" This dissolution *sub modo* being proved, the liability of the stockholder, as declared by the Act, becomes absolute; and I see no valid objection to the enforcement of it in a court of law. There can be no greater difficulty in establishing or resisting the demand there, than in a court of equity, as the ground and extent of the liability are distinctly given. It is true, the stockholder may be subjected to several suits; but he can be charged, only to the extent of his stock. Beyond this, his defence is as perfect at law as in equity. * * *

" The creditors, if more than one, may also, it seems, if they apprehend a deficiency in the fund, enforce in equity a *pro rata* distribution. [*Briggs* v. *Penniman*], 8 Cow. 392. But this must be at their election."

Again (at p. 480): " There can be no doubt, that the liability of the stockholders is several and not joint. The measure of it may be wholly different in each case, depending upon the shares held. A joint suit would be impracticable, as there could be no joint judgment. Besides the Act did not intend they should be sureties for each other."

*Van Hook* v. *Whitlock* (3 Paige, 408) involved the construction of the special act of incorporation of the Commercial Insurance Company which provided that: " as to all debts contracted by the company before the second Tuesday of January, 1820, the persons composing the corporation at the time of its dissolution, should be responsible in their individual and private capacities to the extent of their respective shares in the stock of the company at that time."

Respecting the result of this provision, the court said (at p. 415): " It is equally clear, however, that the creditors of the company

might have brought actions of debt instead of assumpsit. Whereever a statute imposes a legal obligation upon one party to pay money to another, the person to whom the payment is to be made, may maintain an action of debt for the money. (Per BAILEY, J. 7 Dowl. & Ryl. 381; Comyn's Dig. Debt A, 1; Saund. on Pl. 404.) The complainants if they had sued at law, might have brought an action of debt, founded on statute."

The language of *Garrison* v. *Howe* (17 N. Y. 458), in construing the provisions of chapter 40 of the Laws of 1848, furnishes an interesting parallel to that employed in many of the Illinois cases upon which the present applicant relies. The court therein says (at p. 462): " It is, however, well settled, that a creditor may proceed by suit, in the nature of a common law action, against a single stockholder, and both policy and convenience require that he should have that right; for in the case of small debts the proceeding for an account, in the nature of a bill in equity, would be so tedious and expensive as to destroy the value of the remedy. But if the stockholder thus prosecuted can show that he has already paid, on account of the debts of the corporation, a sum equal to the liability which the statute has imposed, namely, the amount of his stock, he will, so far as that remedy is concerned, have defeated the action. The creditor must, therefore, take care to sue only a stockholder who cannot establish such a defence, or if he cannot find such a stockholder, but ascertains that the case is such that, upon the winding up of the concern, he could realize a part or the whole of his demand, he must adopt that form of proceeding. The doctrine that a creditor may proceed at law against a single stockholder, was settled in the late Supreme Court, in *The Bank of Poughkeepsie* v. *Ibbotson* (24 Wend. 473). It was held that the creditor was not required to go into the Court of Chancery for an account, but might proceed directly at law." (See, also, *Weeks* v. *Love*, 50 N. Y. 568, 570.)

Coming down to more modern times, the Court of Appeals, in construing the rights of a creditor against an individual stockholder under section 54 of the Stock Corporation Law (Laws of 1892, chap. 688), wrote as follows in *Lang* v. *Lutz* (180 N. Y. 254, at p. 258): " The effect of the statute was to impose an individual liability, contractual in its nature, upon every person, who became a stockholder. It left him, as to a corporate debt, with the common-law liability of a copartner, to the amount of his stock, until the statute had been complied with as to the full payment of the capital of the company. The law, prior to this act of 1901, in general statutes, as in corporate charters, when providing, as in the Stock Corporation Law of 1892, for a several liability on the part of stockholders for corporate debts, in fact, aimed at preserving the liability, which would have rested upon them as members of a copart-

nership, or unincorporated body, until the requirements for a corporate exemption were complied with. (Ang. & Ames on Corps. § 611; *Allen* v. *Sewall*, 2 Wend. 327; *Moss* v. *Oakley*, 2 Hill, 269; *Corning* v. *McCullough*, 1 N. Y. 47; *Rogers* v. *Decker*, 131 ib. 490.) The individual liability of the stockholder to a creditor was a several and distinct one, and enabled the latter to maintain an action at law alone and without joining others similarly situated. (*Weeks* v. *Love*, 50 N. Y. 568.)

" The Stock Corporation Law of 1892, clearly, invested the creditor of a corporation with a right to maintain an action at law against one, or more, of the stockholders for the recovery of the corporate indebtedness to him; when the conditions thereto, specified by the statute, existed. It was a valuable right, resting in contract, and he could not, constitutionally, be deprived of its full enjoyment. It constituted a part of his security for any debt contracted by the company. The amendatory act of 1901 could not, and did not, affect that right. As to all cases, which might arise thereafter, I assume that it prescribes a new rule of liability under which the remedy available to a creditor is intended to be by way of an equitable action, or proceeding; wherein all the stockholders of the corporation should be made equally and ratably responsible for the payment of corporate debts."

Whereas this legal right of a creditor against a stockholder has been largely modified during the passage of the years, it still exists in our law in respect to the class of creditors specified in section 71 of the Stock Corporation Law and is habitually enforcible at law in the precise manner in which the liability under consideration in the case at bar is enforcible in Illinois where equitable interposition to prevent a multiplicity of suits is not invoked. (*Card* v. *Groesbeck*, 204 N. Y. 301; *Farnum* v. *Harrison*, 167 App. Div. 704; affd., 218 N. Y. 672; *Hitchcock* v. *Pagenstecher*, 198 App. Div. 511; *Halkin* v. *Hume*, 123 Misc. 815; *Horowitz* v. *Winter*, 129 id. 814, 817.)

Finally, in this connection, a suit by one creditor on behalf of all others similarly situated, which is the remedy here invoked and is the alternative mode of recovery permitted by Illinois law, was the accepted method of procedure in this State for the enforcement of the self-same obligation here in question, prior to the enactment contained in chapter 441 of the Laws of 1897 (*Persons* v. *Gardner*, 42 App. Div. 494; *Hirsfeld* v. *Bopp*, 145 N. Y. 84, 96), and even today the creditors have the right personally to enforce these rights in this precise manner if the receiver refuses to act. (Banking Law, § 120; *People* v. *Bank of Staten Island*, 146 App. Div. 378, 381, 382.)

Under the language of *Loucks* v. *Standard Oil Co.*, italicized in the foregoing excerpt, the allowance in this State of remedies substantially identical with that here sought to be enforced " shows beyond question that the foreign statute does not offend the local policy."

Even were this not the fact, however, it would be no ground for refusing relief (*Howarth* v. *Angle*, 162 N. Y. 179, 190; *Loucks* v. *Standard Oil Co., supra; Gregonis* v. *P. & R. Coal & Iron Co.*, 235 N. Y. 152, 160), since, as was said by the United States Supreme Court in *Converse* v. *Hamilton* (224 U. S. 243, 260), in reversing the Supreme Court of Wisconsin, which had refused to enforce an obligation created by the State of Minnesota, similar to that here asserted: " The subject to which chapter 272 is addressed is peculiarly within the regulatory power of the State of Minnesota; so much so that no other State properly can be said to have any public policy thereon. And what the law of Wisconsin may be respecting the relative rights and obligations of creditors and stockholders of corporations of its creation, and the mode and means of enforcing them, is apart from the question under consideration."

Respondents complain that the procedure of enforcement of the rights possessed by petitioners will involve a heavy expense upon the estate. The court is unable to perceive why this should be so, but even if it were, it furnishes no argument to a court of equitable jurisdiction for permitting respondents to repudiate their unquestionable legal and moral obligation. (*Stoddard* v. *Lum*, 159 N. Y. 265, 273.) Perhaps the most conclusive answer to the contention is that respondents could have avoided all procedural expense whatsoever, including that attendant upon the instant application, by making voluntary response to the demand for payment admittedly received from the receiver in the Illinois creditors' action. Since they elected not to do so, they cannot be heard to complain when brought to book for their repudiation of their obligation.

It must, therefore, be determined on the record before the court that the petitioner is a creditor within the contemplation of New York laws and that respondents will be required to file and proceed to settle their account within thirty days.

Upon the trial on the merits of claimants' rights, respondents may interpose any special defenses which they possess. (*Howarth* v. *Angle*, 162 N. Y. 179, 188; *Howarth* v. *Lombard*, 175 Mass. 570, 579.) The actual relief to be granted following such hearing, if any, will be moulded to the exigencies of the case and may involve a direction to respondents to make payment direct to the receiver in the Illinois creditors' suit. (*Wikoff* v. *Hirschel*, 258 N. Y. 28, 31.)

Proceed accordingly.